SUMMERFIELD v. NORTH BRITISH & MERCANTILE INS. CO.

(Circuit Court, W. D. Virginia.  April 12, 1894.)

INSURANCE—CONDITIONS OF POLICY—APPRAISEMENT.

A policy of insurance against fire provided that, in the event of disagreement as to the amount of loss, it should be ascertained by appraisers stating separately sound value and damage, and that no action on the policy should be sustainable until after full compliance by the insured with all its requirements. *Held,* that on the company's refusal to submit to such appraisement except on terms imposing on the appraisers duties and powers not prescribed or provided for in the policy, such as the ascertainment of cost of excavations, value of walls, materials, or any portion saved of the building insured, as well as depreciation on account of age, use, neglect, and location, the insured could maintain an action for the loss.

In Assumpsit.

This was an action by Mrs. R. Summerfield against the North British & Mercantile Insurance Company on a policy of insurance against fire.

This is an action of assumpsit brought on a policy of fire insurance issued by the defendant company to the plaintiff. The contract of the defendant company is to insure the plaintiff against all direct loss or damage by fire, to an amount not exceeding $2,500, on her certain property described in the policy. Of the amount of insurance covered by the policy, $2,250 was on the plaintiff's brick and tin building, $200 on steam, water, and gas fixtures, and electric bells, and $50 on carpets, all contained in said building, which was situate in the city of Danville, Va. The plaintiff claims that the policy of insurance has accrued by reason of the burning of the insured building and the property contained therein. The policy contains a provision that in case of a loss by fire, in the event of disagreement as to the amount of loss, the same shall be ascertained by two competent and disinterested appraisers, the insured and the insurance company each selecting one, and that the two so chosen shall select a competent and disinterested umpire; that the appraisers shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and that the award in writing of any two of the three persons so chosen and selected shall determine the amount of such loss. The policy also further provides that no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements. The parties to this suit have failed to agree as to the amount of damages to be paid to the plaintiff by the defendant company, and also have failed to agree as to the terms on which their disagreement shall be submitted to appraisers; and, by consent of the parties, the case is submitted to the court without a jury.

The defendant company has filed a special plea in bar, as follows: "And the said defendant company comes and says that the aforesaid plaintiff ought not to have and maintain this action against said defendant company because, it says, that in the policy and contract of insurance between the said plaintiff and said defendant company it was stipulated and agreed that, in the event of disagreement as to the amount of loss, in case of such loss, under said contract, the said loss should be ascertained, and the amount thereof determined and settled, by two competent and disinterested appraisers, the same to be selected by the said insured and the said company, each selecting one, and any difference between the two thus selected should be decided by a disinterested umpire; that said defendant did agree or require that such settlement should be made in accordance with its contract with the assured, but, in violation of its stipulation and agreement, the said insured refused to allow said appraisement and estimate to be made by said disinterested appraisers, which, under said contract, ought to have been done, and which was a legal condition precedent to the bringing of this suit, and this the said defendant company is ready to verify. Wherefore it prays judgment whether this court can or will take any further cognizance of the action aforesaid." This is the only plea filed in the case, and the case is submitted to the court on the pleadings and the written evidence comprised in the correspondence between the insured and the insurance company prior to the bringing of this suit, and the evidence of the plaintiff; the agreement between the parties by counsel being that "the defendant company defends this action on no other ground than that raised by the plea aforesaid."

The fire which caused the loss for the payment of which this action is brought occurred on March 7, 1893. Much of the correspondence dated soon after that date relates to proofs of loss, to required detailed statements of the cost of the property consumed by the fire, to inventories, schedules, etc. Some of the letters are addressed to, and were answered in the name of, the plaintiff; but she has testified that her husband attended to the business, and that she knew nothing of the correspondence personally. Later on, the correspondence was between the plaintiff's counsel and the resident secre-

tary, at Baltimore, of the defendant company, but still related to proofs of loss, etc., until June 14th, when the plaintiff's counsel addressed the following letter to the defendant company:  "Danville, Va., June 14, 1893.

"Gentlemen: Insisting that Mrs. Summerfield has already furnished sufficient proofs of loss under her policy in your company, and that she is now entitled to have payment of her loss, and without waiving this position, and protesting against the delay and obstructions which are being interposed to an adjustment of her loss, but with the desire, as far as practicable, to meet every demand for information made upon her, we herewith inclose supplemental proofs of loss; also plans and specifications of the building burned. You already have the builder's estimate of the cost of construction.  Also we inclose invoices of the steam heater and appurtenances, and invoices of carpets put on the floors, to the amount of $1,352.83, in 1889.  Mrs. Summerfield claims that she has sustained greater loss than her insurance on every item covered by your policy.  If you dissent from this, we, as representing her, require that you at once make known to us your dissent, and that you at once arrange to settle the difference with her, and ascertain the amount of the loss by agreement with her, or by arbitration or appraisement."

This is the first suggestion or mention in the correspondence of an appraisement.  In reply, the resident secretary of the insurance company, under date June 26th, says: "Your favor of the 14th and 19th inst., with inclosures, received.  The papers purporting to be supplementary proofs are incomplete and unsatisfactory, as there is no appraisement to show what the other companies covered, except in the description of the other insurance, which accompanied this document. * * * Your suggestion regarding an appraisement of this loss will be acceptable to us under the terms and conditions of our policy, and we will hold ourselves in readiness to enter into the usual form of appraisement when the assured is prepared to carry out the conditions of our contract.  I take for granted you will notify all the companies interested of your intention to appraise the loss and damages."

On the next day—June 27th—the plaintiff's counsel replied:  "Your favor of June 26, 1893, to hand.  We repudiate your objections to the proofs of loss in the case of Mrs. R. Summerfield.  We do not desire any appraisement to determine the loss.  It is manifestly double the amount of insurance, and we have furnished you ample proof to that effect."

The correspondence was further continued as follows:

June 30, 1893, from the defendant company's resident secretary to the plaintiff's counsel: "* * * In reply to yours of the 27th inst., beg to inform you that, whilst you may not desire an appraisement of the loss, we have the right, under our contract, to demand an appraisement, which we will certainly do should you hold the position you take, which I am led to believe by your letter of the 27th, in refusing to carry out the conditions of the policy. * * * You may as well understand now as later that we will insist upon the strict compliance of our contract, and I suggest that all negotiations be conducted in as pleasant a manner as possible under the circumstances."

July 1, 1893, from the plaintiff's counsel to the defendant company: "* * * Your favor to hand.  By their contract of insurance the North British and Mercantile Insurance Company were required to adjust the amount of the loss in the matter of Mrs. R. Summerfield by agreement, and only in case of failure to agree (of course after honest endeavor to do so) had the company any right to demand appraisal.  Four months since the fire have now elapsed, and you can judge whether any just effort has been made to settle this loss.  Besides, no man needs to be told that this loss was largely in excess of the insurance. * * * So far as resorting to appraisement in this case to determine whether the loss exceeds the insurance, it would be as reasonable to call appraisement to determine whether or not a ten-dollar gold coin is worth five dollars."

July 5, 1893, defendant company's resident secretary to the plaintiff's counsel: "* * * In reply to yours of the 1st inst., I beg to state that, although it has been four months since the fire occurred, we were not in possession of any plans, specifications, or schedules of the equipment of the hotel, such as

was covered by our policy, until the middle of June, notwithstanding the assured had been requested to furnish the same more than two months ago, a short while after the receipt of the papers purporting to be proofs of the loss, bearing the date of March 27th, 1893. Objections were made to them very shortly afterwards. Not until the receipt of the papers purporting to be supplementary proofs of loss, together with the plans and specifications, were we in possession of any information whereby even an approximate estimate of loss could be made. You have no right to charge us with delaying action on this loss when it can be proven by letters that have passed between the assured, yourselves, and the company that the delay was caused by the assured not complying with the demands made upon her. Not being able to agree with you, as the legal representatives of the assured, as to the amount of loss and damage to the property covered by our policy, No. 1,406,305, I hereby demand that the loss and damage be appraised in accordance with the terms and conditions of said policy. I take this opportunity of notifying you that we have selected Mr. E. G. Porter, of Goldsboro, N. C., to act as appraiser for this company, and I will hold myself in readiness to sign the appraisement agreement as soon as I am notified that the assured is ready to comply with the terms and conditions of policy No. 1,406,305, North British and Mercantile Insurance Company of London and Edinburgh, issued at its Danville, Va., agency, to Mrs. R. Summerfield."

July 6, 1893, from the plaintiff's counsel to the defendant company's resident secretary: "* * * Insisting upon every position heretofore taken for Mrs. Summerfield, and denying that you are entitled to an appraisement, and without waiving any right or cause of complaint, or otherwise, to which she is entitled as regards her claim against the company you represent, by reason of what has been done in the matter, Mrs. Summerfield, if you desire it, will unite with you in appraisal. She and her representative are here, and in waiting for you and your referee."

July 10, 1893, from the defendant company's resident secretary to the plaintiff's counsel: "* * * Yours of 6th reached here during my absence; hence delay in answering. I have this day placed myself in communication with the appraiser named by me, to know when he could meet me in Danville. I will shortly advise you when to have your appraiser meet us."

The next letter, in chronological order, in the correspondence submitted to the court, is from the plaintiff's counsel, addressed to Messrs. P. Turner and W. O. Selden, at Baltimore, under date of August 4, 1893, and is as follows: "Gentlemen: We have prepared and inclose you herewith agreements for appraisal in the matter of Mrs. R. Summerfield, which we think meet the conditions of the companies you represent. We have signed them for Mrs. Summerfield, and will thank you to sign them and return one to us, and then arrange for your men to meet ours and advise us of the time. We can have our men here on any day."

Inclosed in this letter were two agreements for appraisal, the first of which was as follows:

"Appraisal Agreement.

"It is agreed by and between Mrs. R. Summerfield, of the first part, and the North British and Mercantile Insurance Company of London and Edinburgh, Sun Fire Office, London, and Royal Insurance Company of Liverpool, England, of the second part, that E. G. Porter, selected by said companies, and T. C. Oakley, selected by Mrs. R. Summerfield, shall make a careful appraisement, pursuant to the terms and conditions of policy No. 1,406,305 in the first-mentioned company, No. 4,518,160 in the second-mentioned company, and No. 4,756,231 in the company last mentioned, of the actual cash value, with proper deductions for depreciation, however caused, which actual cash value shall in no event exceed what it would cost the insured to replace the same with materials of like kind and quality, of the property of Mrs. R. Summerfield on the 7th day of March, 1893, which is more particularly described below; also, the actual loss or damage to said property by a fire which occurred on that day. Before entering on the duties assigned them, said Porter and Oakley shall appoint a third party, who shall act as umpire in matters of difference between them only, and the appraisement, when so made by them, or any two of them, shall determine the amount of loss or

damage to said property by said fire. But the companies entering into this appraisal shall not be held to have waived thereby any provision or condition of their respective policies, or any forfeiture thereof, nor shall the said Mrs. R. Summerfield be held to have waived or forfeited or lost any right or remedy that has accrued, or shall accrue, to her by reason of anything connected with said insurance, or done or omitted with reference thereto. The property to be appraised as aforesaid is her five-story brick and tin building described in said policies, and destroyed as aforesaid."

The second of these agreements for appraisal was the same as the first, except as to the names of the appraisers and as to the last paragraph, which was as follows: "The property to be appraised is the steam, water, and gas fixtures and electric bells described in said policies; and the assured shall do what the appraisers may require for exhibiting the same to them for appraisal." August 8, 1893, from P. Turner to plaintiff's counsel: "Gentlemen: Your favors of the 3d and 4th inst., addressed to Mr. Selden and myself, at hand. In the first place, let me say that we are perfectly willing to have a separate appraisal on the heating apparatus, fixtures, and electric bells, and hereby name Richard Swormstedt as our appraiser. In reference to the form of agreement you inclose, I beg to say that it does not bind any one to abide by the result of the appraisal, and is therefore valueless as far as attaining the end for which it is intended goes. There is, moreover, considerable wording which we see no use in, and which, therefore, we would not care to have in any blank signed by us. I have taken the trouble to purchase a blank which does not belong to any company in particular, and which usage has made common with us, and I herewith inclose it for your perusal. This blank clearly shows what wording applies to the building, and what to the personal property, and I think you will not longer delay the appraisal by refusing to sign it when you have read it over. We are perfectly willing to sign this form of blank, which meets all requirements, and await your advices."

The agreement for appraisal inclosed in this letter was as follows:

"Appraisal Agreement.

"It is hereby stipulated and agreed by and between Mrs. R. Summerfield, of the first part, and the North British and Mercantile Insurance Company of London and Edinburgh, Sun Fire Office of London, and Royal Insurance Company of Liverpool, England, of the second part, that E. G. Porter and T. C. Oakley shall make a careful appraisement, pursuant to the terms and conditions of policies Nos. 4,756,231, 1,406,305, issued by the said company, of the sound cash value of the property of Mrs. R. Summerfield on the 7th day of March, 1893, which is more particularly described below, as well as of the actual loss or damage thereto by a fire which occurred on that day; that, before entering upon the duties hereby assigned them, they shall appoint a third party, who shall act as umpire upon matters of difference only; and that said appraisement, when so made by them (or any two of them), in writing, shall be binding and conclusive upon both parties in interest as to the cash value of said property, as well as of the amount of loss and damage thereto, but that such appraisement does not in any respect waive any of the conditions of, or the proof of such loss and damage required by, the said policy of insurance. The property on which loss or damage is to be appraised is on her five-story brick and tin building, steam, water, and gas fixtures, and electric bells, all contained in the above-described building, situate on the north side of Main street, Danville, Virginia. And it is expressly understood and agreed, by and between the parties hereto, that said appraisers shall determine and decide the actual cost, at the present price of materials and labor, of a new building of same size, style, materials, and finish as the one so destroyed, or for repairing the building damaged by said fire; a proper deduction to be made by them for the cost of excavations, the value of the walls, materials, or any portion of said building saved, as well as for depreciation on account of age, use, neglect, and location, and for the difference (if any) between the value of a new or repaired building and the one insured and referred to in this submission. And it is furthermore expressly understood and agreed that, in appraising the damage to stock, machinery, or other property, the said ap-

praisers are to take into consideration the age, condition, and location, and also the cash value, of said property, or any portion thereof, previous to the fire, which may have been saved in a damaged condition, and, after appraising the cost of repairing or replacing said property, a proper deduction shall be made by them for the difference (if any) between the value of the said property when repaired or replaced, new, and the property so insured, and upon which this claim is made. And it is furthermore expressly understood and agreed that the assured must at once place the damaged property·in as good condition as possible, assorting and arranging the same according to their kinds, respectively, separating the damaged from the undamaged, and fill out the schedule blank with a list of the articles upon which damage is claimed, showing the kind and quality of each, so that the appraisers may perform their duty with greater facility. The appraisers will then determine the actual cash value of each article, and place the damage on each at a definite sum per yard, pound, bushel, or gallon, etc., as the case may require, in their proper columns. Articles without apparent or known damage are to be considered uninjured, and not to be included in this schedule; and, if any such are entered herein, the appraisers will mark them 'Not damaged.' Goods damaged by removal should be specified separately."

August 9, 1893, from plaintiff's counsel to P. Turner: "Dear Sir: Your favor to hand. The agreements for submission sent you by us provide that the award of the appraisers, etc., shall fix the amount of the loss, and, moreover, the policies themselves, under which the agreements are made, and which are referred to and become a part of the agreements for submission, provide that the award fixing the loss shall be binding on the parties. These facts, either one without the concurrence of the other, made it unnecessary to state that the award should be binding on the parties, though, if you prefer, you can insert that provision in the form we sent you. We suppose the words you refer to as being unnecessary are those by which Mrs. Summerfield reserves to herself rights acquired and growing out of what has been heretofore done and omitted touching this insurance and loss. Of course, we must preserve those to her, and can't waive them, and that is all that the words referred to do. We think the forms we sent are strictly in accordance with the provisions of the policies, and fully protect all parties, and hope you will, if you still desire appraisal, sign them, and return a copy of each to us. Insert your man's name in the one for appraisal of the steam fixtures, etc."

August 15, 1893, from plaintiff's counsel to defendant company's resident secretary: "Dear Sir: Please advise us whether the North British and Mercantile Insurance Company will settle the claim of Mrs. R. Summerfield without suit or not?"

August 16, 1893, from defendant company's resident secretary to plaintiff's counsel: "Dear Sirs: Yours of the 15th to hand. In reply, beg to state that I submitted the usual form of appraisal agreement for your client's signature, which you objected to, and you in turn submitted one that did not, in my opinion, conform to the contract. Mr. Turner gave me the letter, addressed to us jointly, to read, as well as your form of agreement. He stated that he would send you another form of appraisal agreement, commonly used by insurance companies, which was worded to conform to the standard form of policy, as that submitted by you did not. Since that time I have not heard from him, nor from you, until the receipt of your letter dated August 15th. The direct question put by you, regarding payment of loss, as claimed of us, and suit, I cannot now answer, as demand has been made by us for appraisement of the loss in order to establish what the loss and damage was, which has not been satisfactorily proven; and not until I am notified that the assured declines to carry out the conditions of the policy of this company will I state what action this company will take. If Mr. Turner did not mail you the form of appraisal agreement referred to, I will as soon as your reply is received."

August 17, 1893, from plaintiff's counsel to the defendant company's resident secretary: "Dear Sir: Your favor to hand. It is needless to review the history of this case with the company you represent. Mrs. Summerfield has not, and does not, refuse to carry out any condition of the policy.

She has met them all to the letter, or tried to do so, and when it was objected that what she had done was not satisfactory, and the reasons indicated therefor, she has met that, even though she did not think the objections warranted. The conduct and delay of the company has greatly wronged her. She is now entitled to enforce her claim against the company, and will proceed to do so, unless she is advised that the company will not put her to that necessity. We will therefore be obliged to you to advise us frankly what to expect. Mr. Turner's letter making objections to the agreement we sent him was promptly replied to."

August 21, 1893, from the defendant company's resident secretary to the plaintiff's counsel: "Dear Sirs: Yours of the 17th inst. is to hand. In reply we beg to say that we have demanded an appraisement of the loss and damage to the property of Mrs. R. Summerfield which we insured, and submitted for signature of the assured the customary blank used in such cases, and the only one we use which conforms to our contract, and we are not willing to accept any modified form. When the said appraisal agreements are signed, and returned to either Mr. Turner or myself, the company's appraiser will be notified to proceed with said appraisement. It will be necessary for the assured to put the properties damaged in condition for appraisement."

August 23, 1893, from the plaintiff's counsel to the defendant company's resident secretary: "Dear Sir: Your favor of August 21 to hand late yesterday afternoon. You have been repeatedly assured, and are now again assured, that Mrs. Summerfield is, and will continue, willing and ready to unite with the company you represent in an appraisal of her property that was burned, according to the terms of the policy, reserving all rights that she has. The agreement we sent you signed for her provides for this, and, if in any point it fails, she is ready and desires to amend it so as to accomplish this. We now ask you to say frankly whether it is your purpose for the company you represent to deny liability for this loss, and resist its payment."

August 24, 1893, from the defendant company's resident secretary to the plaintiff's counsel: "Dear Sir: Yours of the 17th inst. is to hand. In reply beg to refer you to my letter of the 21st inst."

August 25, 1893, from the plaintiff's counsel to the defendant company's resident secretary: "Dear Sir: Your favor to hand, dated 24th August. You are again advised that Mrs. Summerfield is ready and willing to accord you appraisal, and enter into it with you upon the terms of the policy, reserving the rights accrued to her. If you will do this without requiring any modification of the terms of the policy, or any waiver by her of her rights now accrued, you are requested to produce your appraiser here at once, and she will be ready to proceed. You did not answer, as you were requested to do, if it was not the formed purpose of and for your company finally to deny all liability for this loss. If this be not so, we will thank you to deny it. The company has no legal or moral right to entertain such a purpose, and not avow it, and occasion the insured loss, expense, and delay by failure and refusal to do so."

August 25, 1893, from the same to the same: "Dear Sir: Replying further to your letter of yesterday, we ask that you will indicate what you mean to imply must be done by Mrs. Summerfield to put the property you wish appraised in position to be appraised? What do you think and mean to imply should be done to it? She will, of course, do anything in this regard that may be proper and necessary for her to do, but she thinks nothing is necessary, and hopes not to be asked to incur any unnecessary expense."

August 25, 1893, from plaintiff's counsel to P. Turner: "Dear Sir: Referring further to your favor of yesterday, but without entering into specifications, we say the form of agreement you wish us to sign is partisan. It adds to the requirements of the policy touching appraisal, and does not follow its language, which it ought to do to be impartial. It undertakes to define the duties, and shape what course the arbitrators must follow, when, as the judges selected for this duty, they ought to be left free to act under the terms of the policy, which is the contract for appraisal agreed on. We wish to be entirely reasonable and fair with you, and wish the same from you to us, and think the way to accomplish this is to meet on the terms of

the policy. It fully protects all parties, and is the contract between them. We desire to accord you fully what it provides for, reserving, of course, what it secures to us, and only that. We see no reason why you should hesitate to sign the agreement we sent you. It is free from the objections you named, but you were authorized to amend it in the particulars you thought objectionable; not, however, in that in which Mrs. Summerfield's rights were saved to her. The agreement you sent makes her waive these if signed by her without amendment. As to putting the property in condition to be appraised, what do you think needs to be done to it to accomplish this? Mrs. Summerfield will do whatever is necessary and proper to be done to it for that purpose. She thinks, however, that it needs nothing, and does not wish to be put to needless cost and expense."

August 26, 1893, from the defendant company's resident secretary to the plaintiff's counsel: "Dear Sirs: Yours of the 25th inst. to hand. Inclosed please find appraisal agreement to be signed by the assured, Mrs. R. Summerfield, and returned to us. Upon its receipt I will notify the company's appraiser to proceed with the appraisement." (The appraisal agreements inclosed in this letter were, in totidem verbis, the same as that sent inclosed in letter from P. Turner to plaintiff's counsel dated August 8th, and copied supra.)

August 29, 1893, from the same to the same: "Dear Sirs: In reply to your favor of the 25th inst., you request me to indicate what would be necessary for the assured to do to put the property in condition to be appraised. I would state that, in order that the appraisers may see the condition of the heating apparatus, water, and gas fixtures, it would be necessary for the assured to clear away the debris which covers them, in order that they may be properly examined, and the loss and damage ascertained. Until this is done, it would be impossible for any appraisers to pass upon the loss intelligently."

August 28, 1893, from the plaintiff's counsel to the defendant company's resident secretary: "Dear Sir: Your favor, with form of agreement for appraisal in the matter of Mrs. R. Summerfield, to hand. We are sorry you make it your ultimatum, and refuse to have appraisal in accordance with the terms of the policy. We must reject the terms it proposes. Wherein do you differ with the assured in her claim that her loss exceeds her insurance?"

August 29, 1893, from the defendant company's resident secretary to the plaintiff's counsel: "Dear Sirs: Yours of the 28th to hand and noted. In reply beg to state that the appraisal papers submitted for appraisement of the loss are in accordance with the terms and conditions of our contract. We have not refused to appraise the loss, nor do we refuse to appraise it in accordance with the terms and conditions of our policy. We contend that the appraisal blanks submitted are in accordance with the contract we issued Mrs. Summerfield, and we are not willing to accept any form of appraisal agreement that does not conform to its conditions, and will hold ourselves in readiness to appraise said loss under the conditions referred to. You ask wherein we differ with the assured in her claim. I will simply say that the loss as claimed of us, according to the papers submitted, is altogether an approximate one, there being no evidence given that the loss is what has been claimed, and, in order that the actual loss and damage may be ascertained, we have demanded an appraisement under the terms and conditions of our policy, and it is evident to us that you do not wish to carry out the conditions of the contract which you hold, by refusing to sign the customary form of appraisal agreement."

This is all of the correspondence, that is material to the issue, submitted to the court.

Peatross & Harriss, for plaintiff.
Berkley & Harrison, for defendant.

PAUL, District Judge (after stating the facts as above). The stipulation between the parties being that the defendant company defends the action on no other grounds than that raised by its

special plea, the sole question for the court to decide is that raised by said plea, namely, has the plaintiff the right to bring and maintain this action, there having been no appraisement of the loss sustained by her for which she claims damages? This case resembles, in some of its features, the case of Hamilton v. Liverpool, etc., Ins. Co., 136 U. S. 242, 10 Sup. Ct. 945, but there are material differences between the two. In the case mentioned, the supreme court held that "a condition in a policy of fire insurance that any difference arising between the parties as to the amount of loss or damage of the property insured shall be submitted, at the written request of either party, to the appraisal of competent and impartial persons, whose award shall be conclusive as to the amount of loss or damage only, and shall not determine the question of the liability of the insurance company; that the company shall have the right to take the whole, or any part, of the property at its appraised value; and that, until such appraisal and award, no loss shall be payable or action maintainable,—is valid; and if the company requests in writing that the loss or damage be submitted to appraisers in accordance with the conditions, and the assured refuses to do so unless the company will consent, in advance, to define the legal powers and duties of the appraisers, and, against the protest of the company, asserts and exercises the right to sell the property before the completion of an award, he can maintain no action upon the policy." In this case, unlike the one mentioned, there is no express condition in the policy of insurance that "until such appraisal and award no loss shall be payable or action maintainable," though there is a provision that "no suit or action on this policy, for the recovery of any claim, shall be maintainable in any court of law or equity, until after full compliance by the assured with all the foregoing requirements," one of which requirements is that, "in the event of disagreement as to the amount of loss, the same shall &ast; &ast; &ast; be ascertained by two competent and disinterested appraisers;" and this, it is claimed by the defendant company, has the same effect as if there had been in the policy an express condition that, until an appraisal and award had been made, no action shall be maintainable for the recovery of any claim under the policy, or, in the language of the defendant company's special plea, that "said appraisal and estimate &ast; &ast; &ast; under said contract &ast; &ast; &ast; was a legal condition precedent to the bringing of this suit." Inasmuch as a stipulation in a contract making a condition precedent to the bringing of a suit upon such contract tends to oust the courts of their proper jurisdiction under our laws for deciding controversies between suitors, for which the courts are established, it may at least be a subject of grave inquiry whether such a condition is valid unless expressly stated in such contract, and not a mere inference to be drawn from the terms of the contract. As was said in Hamilton v. Liverpool, etc., Ins. Co., ubi supra:

"Such a stipulation, not ousting the jurisdiction of the courts, but leaving the general liability to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is

unquestionably valid according to the uniform current of authority in England and in this country."

But it cannot be contended that, in such a case as this, an appraisal of the loss is an absolute sine qua non to the bringing of a suit. If it were, all that an insurance company would have to do in order to avoid payment of a loss against which it had insured its patron would be to refuse to name an appraiser, or otherwise arbitrarily prevent an appraisement. A stipulation for an appraisement should probably have for its sole object the ascertainment of the amount of the loss in the event that the parties cannot agree between themselves as to the amount of the loss. Under such a stipulation, no appraisement becomes necessary, or is contemplated, until, after honest effort to do so, the parties cannot agree as to the amount of the loss. The correspondence in this case, which is the only evidence submitted to the court, discloses the following facts: Soon after the fire occurred which consumed the property for loss of which this suit is brought, the plaintiff notified the defendant company of said fire, and presented her claim for the loss she had sustained. The defendant company was not satisfied with the proofs of the loss, and demanded fuller proofs, inventories, schedules, and detailed statements. The plaintiff replied, and undertook to comply with these requirements, but still failed to satisfy the defendant company. Her letter in which she undertook to do this is dated April 25th, and on May 19th, after a delay of 24 days, the defendant company replied to it, requiring her to furnish information as to the value of the bricks, etc., which remained unconsumed after the fire. The plaintiff again undertook to comply with the requirements of the defendant company in a letter dated May 21st. Receiving no reply to this letter, she employed counsel, as is apparent from the correspondence, though not stated. Her counsel, it appears from the correspondence, commenced the correspondence with the defendant company by writing it a postal card, which appears to have been dated on the 29th of May, but this postal card is not among the correspondence submitted in evidence. On June 8th the defendant company, in reply to said postal card, wrote to the plaintiff's counsel, renewing the requirements for further proofs, etc. On June 14th the plaintiff's counsel replied to the defendant company, inclosing supplemental proofs, invoices, etc., and demanding that the defendant company at once arrange to settle the difference with the plaintiff, and ascertain the amount of the loss by agreement with her, or by arbitration or appraisement. As the matter of an appraisement of the loss is the most conspicuous feature in this case, it may be proper to note that this is the first suggestion or mention, anywhere in the correspondence, of an appraisement, and that it was made by the plaintiff, and not by the defendant company. The correspondence was continued at considerable length between the parties, both expressing a willingness and desire for an appraisal of the loss upon the terms of the policy. Each party proposed to the other an agreement for an appraisal, or, as it is called, a form of submission, between which there were material differences; and the contention between the parties in

regard to the forms of submission proposed by them, respectively, is the very root of the issue before the court. The form of submission proposed by the plaintiff provided that the appraisers "shall make a careful appraisement, pursuant to the terms and conditions" of the policy, "of the actual cash value," etc., following the phraseology of the policy itself. The court is of opinion that the form of submission proposed by the defendant company was not in accordance with the provisions of the policy. It defines and imposes on the appraisers duties and powers not prescribed or provided for in the policy, such as the ascertainment of the cost of excavations, value of walls, materials, or any portion of said building saved, as well as depreciation on account of age, use, neglect, and location, and the difference in value, if any, between a new or repaired building and the one insured, and to deduct such values from the amount of the damage. And the defendant company refused to submit to an appraisement except upon the terms of the form of submission proposed by it, whereby it placed itself in the attitude of the plaintiff Hamilton in the case of Hamilton v. Liverpool, etc., Ins. Co., ubi supra; and under the authority of that decision, and the authorities therein cited, judgment must be entered in this case for the plaintiff. See, also, Hamilton v. Home Ins. Co., 137 U. S. 370, 11 Sup. Ct. 133, and the authorities there cited.