## THE BIRMINGHAM FIRE INSURANCE COMPANY

*v.*

## EMILIE PULVER.

*Filed at Ottawa November 15, 1888.*

1. INSURANCE—*proofs of loss—defects therein—waiver—evidence.* In case of defects in the proofs of loss under a policy of fire insurance, required to be made, it is the duty of the insurance company to point out such defects, and afford all reasonable facilities to the assured to

obviate them. An unwillingness or refusal of the company to afford reasonable facilities to the assured to prepare and serve amended proofs of loss, is evidence for the jury, as tending to show a waiver of the defects in the proofs.

2. After a loss by fire, the assured furnished the insurance company with proofs of the loss, the policy requiring the same, to which exceptions were taken. The attorney who made out the proofs having died, the assured employed another attorney to correct them, who called upon the local agent of the company to learn what was wrong, and what could be done to correct the proofs. The latter promised to show the attorney the proofs, but failed to do so. The attorney then called on the adjusting agent of the company, who refused to let him see the proofs. The attorney then wrote a letter to the local agent, in which he recited his several efforts in that behalf, and asked for an explanation. In a suit on the policy, the plaintiff, after proving these facts, offered in evidence the letter of his attorney, which the court admitted, over the defendant's objection: *Held*, no error, and that the interviews and correspondence between the plaintiff's attorney and the defendant's agents, in relation to obtaining a view of the proofs served, was competent, as tending to prove a waiver of the defects therein.

3. SAME—*measure of recovery—whether limited by the certificate of another—or sworn statement of assured.* A policy of insurance required the assured, in case of loss, to furnish, with his proof of loss, a certificate of a magistrate of the value of the goods destroyed. The policy did not make such certificate an award, or provide that the assured should be bound by his estimate. The assured, in his proof of loss, stated the loss to be $3883, while the magistrate, whose certificate was appended to and formed part of the proof of loss, stated the loss to be $1000: *Held*, that the assured was not limited to the amount certified to by the magistrate, but might, notwithstanding such certificate, establish by witnesses the true amount of the loss.

4. It has been held, that even the sworn statement of the assured himself, in his proofs of loss, will not estop him, but that in a suit on the policy he may give evidence of the actual amount of his loss, and recover accordingly.

5. SAME—*measure of recovery upon basis of "the actual cash value"—an instruction construed.* In an action for a loss on a policy of insurance, which provided that the estimate of any loss should be made according to "the actual cash value" of the property, an instruction was given which directed the jury to estimate the plaintiff's damages, in case of a recovery, according to the "fair cash value" of the property destroyed: *Held*, that there was no practical difference in the two forms of expression in relation to the measure of damages.

6. The actual cash value of property is the price which it will bring in a fair market, after fair and reasonable efforts have been made to find

a purchaser who will give the highest price. The actual cash value, then, is the fair or reasonable cash price for which the property can be sold in the market.

7. SAME—*condition to arbitrate—effect upon right of action on policy.* A condition in a policy of insurance providing for an arbitration in case the parties can not agree as to the amount of a loss, can not operate to deprive the assured of his right of action, unless clearly made a condition precedent to the existence of such right.

8. ERROR—*favorable to party complaining.* Where a party asks an instruction which he is not entitled to, which is refused, and the court, in lieu thereof, gives another which is more favorable to him than he is entitled to have, if there is error in the latter it is one of which he can not complain.

9. EVIDENCE—*opinions of witnesses—expert testimony.* In an action on a policy of insurance to recover for a loss of goods by fire, the defendant offered to give in evidence the estimates or opinions of several witnesses who saw the debris and ashes after the fire, based upon what they saw, as to the quantity of goods lost by the plaintiff: *Held*, that apart from the fact that the opinions sought to be elicited were based upon data too uncertain and equivocal to be of any value, the case was not one which properly admitted of expert evidence. It was for the witnesses to describe what they saw, and leave the conclusions to be drawn therefrom to the jury.

10. PRACTICE—*limiting cross-examination.* It is in the discretion of the trial court to confine counsel within reasonable limits in the cross-examination of witnesses, and the exercise of such discretion, when not abused, can not be assigned for error.

11. SAME—*remarks of the court in ruling upon evidence.* Remarks of the court in ruling upon the admissibility of evidence, alluding to other evidence in the record, to make his meaning clear, is not unusual; and even when inadvertent remarks are made by the court, and the jury are told, by instructions, that they are the judges of the weight of the evidence and the credibility of the witnesses, and they are given the usual charge as to the preponderance of the evidence, so that it appears such remarks do not operate to the prejudice of the party complaining, they will not constitute such error as to require a reversal.

12. In ruling upon the admissibility of evidence, the judge should use great caution in expressing his opinion on any question which it is the province of the jury to decide. But every unguarded expression of the judge in stating reasons to counsel for his rulings, can not be treated as ground for granting a new trial.

13. CHARGING THE JURY—*court not limited to instructions asked by the parties.* In this State, the court is not limited to giving instructions submitted by counsel. The court may limit itself to giving in-

structions asked which properly state the law, and then, even though the law be inadequately given to the jury, no error can ordinarily be predicated upon such action, for the reason if counsel deem further instructions necessary, they should ask them.

14.  On the trial of a case, the defendant asked nineteen instructions, all of which, as well as the instructions asked by the plaintiff, were refused, and the court gave, in lieu thereof, a series of instructions prepared by himself.  Some of the defendant's instructions asked were erroneous, while as to the others, some collateral points and details were not covered by those given, but every material point in those refused, having a direct bearing upon the issues, was fairly covered and clearly stated in those given:  *Held,* that the defendant had no substantial ground of complaint.

15.  Where the trial judge sees proper to do so, it is competent for him to prepare his own charge to the jury; but if he does so, he should embody in it, either literally or in substance, all proper instructions asked by counsel.

16.  SAME—*as to the proper subject of the charge—directing the jury as to the mode of discharging their duty.*  Instructions to the jury as to the proper method of discharging their duties, or cautions against prejudice and favoritism, may properly be given; but the giving of them is necessarily a matter very much in the discretion of the court, and their refusal can not ordinarily be assigned for error.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. MOSES & NEWMAN, for the appellant.

Messrs. KRAUS, MAYER & STEIN, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a suit in assumpsit, brought by Emilie Pulver against the Birmingham Fire Insurance Company of Pittsburg, to recover the amount of a loss under a policy of insurance against fire.  The trial in the Superior Court resulted in a judgment in favor of the plaintiff for $1103.85 and costs, which judgment was affirmed on appeal by the Appellate Court.  By a further appeal the defendant brings the record to this court and assigns for error the judgment of the Appellate Court.

The policy of insurance in question was one of three policies for $1000 each, issued to the plaintiff by the defendant and two other insurance companies, upon her stock in trade, consisting chiefly of dresses and cloaks, manufactured and in process of manufacture, and in dress goods and trimmings, contained in a certain building on North Clark street, Chicago. Various questions of fact were presented at the trial, upon most of which the evidence was more or less conflicting. Most prominent among these were, whether the plaintiff was the owner of the property insured at the time the policy was issued and at the time of the loss; whether the plaintiff fraudulently overstated the amount and value of the property destroyed or damaged in her proofs of loss; whether she fully performed the conditions of the policy relating to preliminary proofs of loss, or whether the defendant accepted the proofs rendered as a performance of said conditions and waived further performance; and the true amount and value of the property damaged or destroyed. As to all these questions the judgment of the Appellate Court in favor of the plaintiff is conclusive.

Complaint is made of the admission by the Superior Court of certain evidence offered by the plaintiff upon the question of a waiver by the defendant of the conditions of the policy in relation to preliminary proofs of loss. The policy contained the condition usually found in fire policies on that subject, and the first count of the declaration alleged the furnishing of certain proofs of loss and an acceptance and approval of such proofs by the defendant and a waiver of all exceptions and objections thereto, while the second count alleged that the defendant waived and dispensed with the proofs of loss required by the policy. Certain proofs of loss furnished by the plaintiff to the defendant having been read in evidence, and it appearing that the defendant, after having retained said proofs for a considerable time, took some exceptions thereto, the plaintiff, to establish a waiver of the alleged defects in the proofs, gave evidence, among other things, tending to show that shortly

after said proofs were served, the attorney who drew them up had died and that the plaintiff thereupon employed another attorney, who called upon the local agent of the defendant twice to ascertain what was the difficulty with the proofs and to learn what should be done by way of correcting them; that the local agent offered to show him the proofs but failed to do so; that he then called upon the defendant's adjusting agent who also refused to let him see the proofs. The plaintiff then offered and the court admitted in evidence over the objection and exception of the defendant a letter written by the attorney to the local agent after the failure of his several efforts to obtain a view of the proofs, in which he recounted his efforts in that behalf and their result, and asked for an explanation. We can perceive no error in the admission of this letter. That, and the attorney's preceding interviews with the defendant's agents were only parts of the attempt on his part to ascertain the nature of the objections to the proofs of loss so as to be able to obviate them. If there were any defects in the proofs of which the defendant in good faith complained, it was its duty to point them out and afford all reasonable facilities to the plaintiff to ascertain what they were so as to be able to remedy them. A refusal to exhibit the proofs was evidence tending to prove that the objections urged were merely captious, and not made with any view of obtaining corrected proofs. The unwillingness of the defendant to afford reasonable facilities to the plaintiff to prepare and serve amended proofs, was evidence for the jury to consider, as tending to show that it was content with the proofs already furnished and therefore waived all defects therein. It follows that the interviews and correspondence between the plaintiff's attorney and the defendant's agents in relation to obtaining a view of the proofs served was competent as tending to prove such waiver.

The plaintiff, in her proofs of loss, stated the amount of her loss to be $3886.95, while the notary public whose certificate is appended to and forms a part of said proofs, stated the

loss to be $1000. The defendant claims, as a matter of law, that the plaintiff is bound by the notary's certificate as to the amount of the loss, and that, as there are three concurrent policies of $1000 each, the plaintiff's recovery should have been limited to one-third of the amount certified to by the notary. In this view we are unable to concur. Proofs of loss are required by the conditions of policies of insurance for the purpose of furnishing the insurer with evidence upon which to determine the fact and the amount of its liability, and also to serve as the basis for the adjustment of the loss with the insured. Among the proofs required are the plaintiff's sworn estimate of the amount of the loss, and an official estimate of it by a neighboring and disinterested magistrate. The magistrate's certificate is produced, not as the award of an arbitrator, or as the certificate of a party by whose estimate the insured either expressly or impliedly agrees to be bound, but merely as the estimate of a third party which the insurer sees fit to require by the conditions of the policy. The insured obtains and furnishes the certificate as a performance of such condition, and not as admitting its accuracy or agreeing to be bound by it. It is open to him, notwithstanding the certificate, in a suit upon the policy, to establish by witnesses the true amount of the loss.

It has been frequently held that even the sworn statement of the insured himself in his proofs of loss will not estop him, but that, in a suit upon the policy, he may give evidence of the actual amount of his loss and recover accordingly. *Lebanon Ins. Co.* v. *Kepler,* 106 Pa. St. 28; *Miaghan* v. *Hartford Ins. Co.* 24 Hun, 58; *Hoffman* v. *Ætna Ins. Co.* 1 Rob. (N. Y.) 501; 32 N. Y. 405; *Parmelee* v. *Hoffman Fire Ins. Co.* 54 id. 193; *McMaster* v. *Insurance Co.* 55 id. 222; *Commercial Ins. Co.* v. *Huckberger,* 52 Ill. 464. In *Farrell* v. *Ætna Fire Ins. Co.* 7 Baxter, 542, it was held that the statement in the magistrate's certificate as to the value of the property lost by fire is not even competent evidence in favor of the insured to show the

amount of the loss, which could certainly not be the rule if such certificate constituted an estoppel, for the reason that estoppels must be mutual.

A number of exceptions were taken by the defendant to the rulings of the court in giving and refusing instructions to the jury. The defendant asked nineteen instructions, all of which, as well as the instructions asked by the plaintiff, were refused, the court giving, in lieu of the instructions asked, a series of instructions prepared by himself, covering, as he seemed to view the case, all the questions of law presented upon which it was necessary or advisable to instruct the jury. The propriety of the practice thus adopted is challenged, the proposition contended for seeming to be, that in this State, the functions of the court in the matter of instructing the jury, are practically limited to giving or refusing the written instructions submitted by counsel. Such clearly is not the case. True, he may, if he sees fit, limit himself to giving the instructions submitted by counsel which properly state the law, and then, even though the law be inadequately given to the jury, no error can ordinarily be predicated upon such action, because, if counsel had deemed further instructions necessary, they might and should have asked them. But where the judge sees proper to do so, it is competent for him to prepare his own charge to the jury, but if he does so, he should embody in it, either literally or in substance, all proper instructions asked by counsel. Indeed, the preparation of a charge by the judge may often have the advantage of furnishing the jury with a terse, consecutive and logical statement of the law applicable to the case, in place of the loose, disjointed and obscure presentation of the law which often results from giving instructions in the form in which they are prepared by the respective counsel.

The series of instructions given by the court is criticised both for what it contains and for what it omits. So far as it goes, we are able to discover no error of which the defendant can complain. It is urged that it is erroneous in directing the

jury to estimate the plaintiff's damages, in case of a recovery, according to the "fair cash value" of the property destroyed, while the policy requires that the estimate should be made according to "the actual cash value" of the property. Between these two forms of expression we are unable to perceive any practical difference. The actual cash value of property is the price which it will bring in a fair market, after fair and reasonable efforts have been made to find the purchaser who will give the highest price. The actual cash value then is the fair or reasonable cash price for which the property can be sold in the market. We see therefore no impropriety in explaining the "actual cash value" as meaning the "fair cash value," or in using the two phrases as practically synonymous.

The instructions given enumerate among the defenses of which the defendant was seeking to avail itself, the failure of the plaintiff to submit her differences with the defendant in relation to her loss or damage to arbitration, in accordance with the conditions of the policy, and on that question the jury were instructed as follows:

"As to the question of arbitration, you are instructed that, under the provisions of the policy, if there was a dispute as to the amount of the loss, then either party could demand an arbitration, to determine the amount of such loss, by serving a notice in writing on the opposite party; and, before you can find against the plaintiff on this point, you must believe, from the evidence, that there was a dispute between the parties as to the amount of the loss, and that notice in writing was served on her, or on some one authorized to act for her, demanding such arbitration in accordance with the provisions of the policy, and that she in person, or by her attorney, without sufficient cause, refused to submit to such arbitration."

It is insisted that this instruction, though holding the law substantially in accordance with the defendant's theory, is erroneous in not conforming in its hypothesis to the evidence as it was actually given, the evidence being, as is claimed, in

22—126 ILL.

accordance with the hypothesis of an instruction asked by the defendant which was as follows:

"If the jury believe, from the evidence, that the plaintiff requested such award, and the defendant accepted and acted upon such request and proceeded to appoint an arbitrator, and if the jury further believe, from the evidence, that the plaintiff, without any sufficient reason, abandoned said arbitration so requested by her, then the plaintiff can not recover in this case, and your verdict will be for the defendant."

It is useless to inquire whether the instruction given is defective as claimed, for the reason that, under the conditions of the policy, a failure to arbitrate could in no event be a defense. The policy provides that, "in case differences shall arise touching any loss or damage, after proof of these has been received in due form, the matter shall, at the written request of either party, be submitted to impartial arbitrators, whose award in writing shall be binding on the parties as to the amount of such loss or damage, but shall not decide the liability of the company under this policy." There is no condition in the policy that the loss should not be payable until such arbitration and award should be had, or in any way making a submission to arbitration a condition precedent to the payment of the loss. The promise to pay, and the provision making such payment conditional upon the production of proofs, etc., are in a preceding part of the policy, and are in no way incorporated with or made dependent upon the condition in relation to arbitration.

A condition in a policy providing for an arbitration can not operate to deprive the insured of his right of action, unless clearly made a condition precedent to the existence of such right. *Liverpool, London and Globe Ins. Co.* v. *Creighton*, 51 Ga. 95; *Patterson* v. *Triumph Ins. Co.* 64 Maine, 500; *Roper* v. *Lendon*, 1 Ell. & Black. 825; *Gore* v. *Council Bluffs Ins. Co.* 67 Iowa, 272; *Reed* v. *Washington Fire and Marine Ins. Co.* 138 Mass. 572; *Canfield* v. *Watertown Fire Ins. Co.* 55

Wis. 419; *German-American Ins. Co.* v. *Steiger*, 109 Ill. 254. There was no error therefore in refusing the instructions asked by the defendant on the subject of arbitration, and the instruction given being more favorable to the defendant than it had a right to ask, there was no error in giving it of which the defendant can complain.

But it is claimed that the court erred in refusing the defendant's instructions because they contained various propositions of law upon which the jury should have been instructed which were not covered by the instructions given. It would serve no useful purpose for us to review each of the refused instructions in detail, and it must therefore suffice for us to say generally that we have carefully examined them in connection with the instructions given, and are of the opinion that no proposition of law was omitted in respect to which the defendant has any substantial ground of complaint. Several of the instructions refused were properly refused on account of inherent defects in the instructions themselves. As to the residue, while some collateral points and details are not covered, we think every material point having a direct bearing upon the issues in the case is fairly and clearly stated. Several propositions, it is true, are omitted, which bear merely upon collateral matters, and consist of lectures to the jury upon the proper method of discharging their duties, or cautions against prejudice and favoritism. Instructions of this character may properly be given, but giving them is necessarily a matter very much within the discretion of the court. He is in a position to observe and know whether the situation is such as to render such cautionary instructions necessary to a due administration of justice, and if in his opinion they are not, his refusal to give them can not ordinarily be assigned for error.

At the trial the defendant called several witnesses who saw the debris and ashes after the fire, and offered to introduce in evidence the estimates or opinions of said witnesses, based upon what they saw, as to the quantity of goods lost by the

plaintiff. This evidence was excluded, and we think properly. Apart from the consideration that the opinions sought to be elicited were based upon data too uncertain and equivocal to be of any value, the case is not one which properly admitted of expert evidence. It was for the witnesses to describe what they saw, and if any reliable conclusions could be drawn from the appearance of the debris and ashes as they appeared some time after the fire, the jury were as well qualified as the witnesses to draw such conclusions.

Certain criticisms are made upon the conduct of the judge during the course of the trial. On that subject we adopt, as expressing our views, the following portions of the opinion of the Appellate Court pronounced by MORAN, J.:

"Complaint is made of the course of the trial judge in interfering with the cross-examination of some of the witnesses, and because of remarks made in ruling on points in reply to the arguments of counsel. The cross-examinations were in some instances inordinately extended, and it is in the discretion of the court to confine counsel within reasonable limits. We find no abuse of such discretion in this case. While 'patience and gravity of bearing is an essential part of justice,' the judge has the direction of the trial, and is much better able to perceive what is unnecessary than counsel who is engaged in a heated contest with the witness. The remarks or comments of the court mainly complained of were made in ruling upon objections, and are statements that the evidence upon certain points was thus and so. The admissibility of evidence offered frequently depends upon the evidence already introduced, and it is not unusual for the court in ruling, to allude to such evidence as is in the record, to make his meaning plain.

"This, of course, should be done in such manner as to express no opinion as to what such evidence proves. Owing to the regard which is paid by jurors to the opinion of the judge, he should use great caution in expressing his opinion on any

question which it is the province of the jury to determine. But every unguarded expression of the judge in stating reasons to counsel for his rulings, can not be treated as a ground for granting a new trial. To do so would be to greatly embarrass the administration of justice.

"The jury were told that they were the judges of the weight of the evidence, and of the credibility of the witnesses, and were given the usual instructions as to the preponderance of the evidence, and from the whole course of the trial no doubt thoroughly understood that it was their province to determine what were the facts established by the evidence. We are of the opinion that the inadvertent remarks of the court did not in fact operate to the injury of appellant, and do not constitute such error as to require us for that reason to reverse the case."

After a patient examination of the whole record we fail to find any error of law which in our judgment is material. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*