MUTUAL FIRE INS. CO. OF NEW YORK v. ALVORD.

(Circuit Court of Appeals, First Circuit. April 18, 1894.)

No. 68.

1. INSURANCE—CONDITIONS OF POLICY—ARBITRATION.
    The insured is not precluded from suing on a policy by a provision therein that the amount to be paid, in case of disagreement, shall be submitted to arbitration, but not expressly or by implication prohibiting suit until after such arbitration.

2. SAME—SUBMISSION TO ARBITRATION.
    In an action on a policy providing for estimates of loss by both parties, and that, in the event of disagreement, the amount should be ascertained

by two appraisers, each party selecting one, and the two selecting an umpire, evidence of an agreement for submission, expressly declaring that it shall not be construed as a waiver of the rights of either party, and an award thereon, not showing that any estimate of loss was made by the insurer, or that any umpire was chosen, is inadmissible.

3. EXPERT TESTIMONY—QUALIFICATIONS OF WITNESS.

The question whether a witness is qualified to testify as an expert is largely within the discretion of the trial judge.

4. INSURANCE — PROVISIONS OF POLICY AGAINST OVERINSURANCE — RIGHTS OF MORTGAGEE.

Under a policy providing against other insurance except to a certain amount permitted, with a mortgagee clause making any loss payable to the mortgagee, and providing that he should not suffer for any act or neglect of the mortgagor, his rights are not affected by the mortgagor obtaining more insurance than the amount permitted, even though the policies are in his possession, or though the insurance is taken out by him at the mortgagor's request; and a policy taken out by him, which, with the insurance then existing, does not exceed the amount permitted, is not invalidated by subsequent insurance by the mortgagor in excess of that amount.

In error to the Circuit Court of the United States for the District of Massachusetts.

This was an action by Alfred E. Alvord against the Mutual Fire Insurance Company of New York on a policy of insurance against fire. At the trial the jury found a verdict for plaintiff. A motion by defendant for a new trial was overruled, and judgment for plaintiff was entered on the verdict. Defendant brought error.

The policy contained a provision that "this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." An agreement added to the policy permitted "other concurrent insurance to three-fourths value."

A mortgagee clause, added to the policy, made the loss, if any, payable to plaintiff, "mortgagee or trustee," and provided "that this insurance, as to the interest of the mortgagee or trustee only, therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property described."

The charge of the presiding judge at the trial, relating to overinsurance, referred to in the following opinion of the court, was as follows:

"Now, gentlemen, there is another question raised here which comes in as part of the defense, and as to which the burden of proof is on the defendant, and that is the claim that some one has violated the terms of these policies with reference to other insurance, so as to invalidate them. These policies contain a clause in the usual form, prohibiting other insurance without the consent of the underwriter; and it also provides that, if other insurance is obtained without the consent of the underwriters, it shall avoid these policies; and it goes further, and contains the usual provision that it shall so avoid even though the other insurance is itself void. And then comes in a clause permitting other concurrent insurance to an amount not exceeding three-quarters of the value. Now, that is a reasonable clause, an advantageous clause, and a clause that ought to be fairly and justly enforced by the courts and by juries, because it is the main remedy which the company has against overinsurance, against fraudulent insurance; a practice, so far as it exists, detrimental, gentlemen, alike to you and to the insurance companies. It does not follow that in this case the other insurance must be fraudulently or willfully obtained, or even knowingly obtained, in excess of the amount permitted. It is a case where the underwriters, in order to protect themselves against overinsurance, are entitled to say, and must say, that overinsurance avoids the policy, even though it is obtained innocently or ignorantly; no question of fraud arising, but a pure question of fact, nothing else.

"But, gentlemen, this policy provides that the mortgagee shall not suffer—I am not giving you the precise language, but the substance of it—shall not suffer by the act, or neglect of the mortgagor; and therefore I instruct you, gentlemen, that although the mortgagor may have of itself taken out policies in excess of the amount permitted, and although it may have made these policies payable to the mortgagee, and the mortgagee may have taken them and held them, yet the taking out of the policies is the act of the mortgagor under these circumstances, and not an act for which the mortgagee should suffer. So, also, gentlemen, if Mr. Alvord, at the request of the mortgagor, obtained policies of that character, and did nothing more than to obtain them at the request of the mortgagor, that would be an act of Mr. Alvord in his individual capacity as the agent of the mortgagor, and not his act as trustee, and would not affect him in this litigation, if that was all which appeared in the case. So that if, by the course of dealing between the parties, especially between the mortgagor and the mortgagee, Mr. Alvord, under authority implied in the course of business, obtained policies, as already stated, in excess of the amount permitted, yet, gentlemen, he would still be acting as the agent of the mortgagor, in his individual capacity, and not as trustee; and his act would not affect his rights as trustee, or the rights of the bondholders whom he represents. In other words, so far as he, either by direct authority or by implication arising from the course of business, obtained insurance policies as the agent or representative of the mortgagor, he acted individually, and not as trustee, and these suits cannot be affected by what he did.

"But, gentlemen, there is some evidence here concerning a certain Concord policy or certain Concord policies, as to which I leave the facts entirely for you, stating that, if Mr. Alvord, as trustee, or under color of his office as trustee, or on his own motion, for the purpose of protecting the trust property, and without request from the mortgagor, obtained insurance, although that insurance was to cover the mortgagor's interest, and it was payable to him, that was his own independent act as trustee, by which he must stand or fall. But, gentlemen, if you reach that stage of the case, if you come to a determination upon that point, and hold that under these rules Mr. Alvord was acting of his own motion as trustee in securing this Concord policy or policies, so that his obtaining of it was his own act, and not the act of the mortgagor, you have this fact further to consider: Those Concord policies, you will find, were all dated the 25th day of July, 1890, and expired the 25th day of July, 1891; and at that time the amount of policies then existing upon the property, if I have computed correctly,—you will compute it,—the amount of policies then existing upon the property was $69,500, including the Concord policies,—all of them. In other words, the amount of policies, as shown by the proof of loss, obtained after July 25, 1890, if I have computed correctly,—you will have the proof with you,—was $23,000. And I instruct you, gentlemen, that if the policies obtained by the trustee on his own motion did not, at the date when they were obtained, bring the amount of insurance beyond the three-quarters which was permitted, the obtaining of the additional $23,000 afterwards by the mortgagor cannot be considered by you. You are to look at the state of the policies at the time when the Concord policies were obtained, and not consider what were subsequently taken out. I may be in error about these figures, but I simply call your attention to the fact. But bear in mind that the burden is upon the defendants, not upon the plaintiff, to show to you the amount of insurance existing on the property at the time when the Concord policies were taken out."

Godfrey Morse and Edwin N. Hill, for plaintiff in error.

Barron C. Moulton and Victor J. Loring, for defendant in error.

Before COLT, Circuit Judge, and NELSON and ALDRICH, District Judges.

COLT, Circuit Judge. The policy of insurance upon which this suit was brought contains the following provisions relating to the ascertainment or estimate of loss:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. Said ascertainment or estimate shall be made by the insured and this company; or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. * * * In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers, together, shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss. * * * This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers, when appraisal has been required."

It is undoubtedly true that a policy of insurance may contain a valid provision which prohibits the insured from maintaining an action until the amount of loss shall have been first submitted to arbitration, and an award shall have been made. In such a case the determination of the amount by arbitration is recognized as a condition precedent to the right of the insured to bring suit. Hamilton v. Insurance Co., 136 U. S. 242, 10 Sup. Ct. 945; Scott v. Avery, 5 H. L. Cas. 811; Viney v. Bignold, 20 Q. B. Div. 172. But, in order to make such award a condition precedent to the right of maintaining suit, it must be so expressed in the policy, or necessarily implied from its terms. A mere provision in the policy that the amount to be paid in case of disagreement shall be submitted to arbitration does not prevent the insured from maintaining an action, unless the policy further provides that no action shall be maintained until after award; but such agreement to submit to arbitration is regarded as a collateral and independent agreement, the breach of which, while it will support a separate action, cannot be pleaded in bar to an action on the principal contract. Hamilton v. Insurance Co., 137 U. S. 370, 385, 11 Sup. Ct. 133; Roper v. Lendon, 1 El. & El. 825; Collins v. Locke, 4 App. Cas. 674; Dawson v. Fitzgerald, 1 Exch. Div. 257; Reed v. Insurance Co., 138 Mass. 572; Seward v. City of Rochester, 109 N. Y. 164, 16 N. E. 348; Insurance Co. v. Pulver, 126 Ill. 329, 18 N. E. 804; Crossley v. Insurance Co., 27 Fed. 30. There is nothing in the terms of this policy which expressly or by implication forbids the insured from bringing suit until after the amount of loss has been submitted to arbitration and an award has been made, and therefore we must consider the provisions in the policy relating to this subject as constituting a collateral and independent agreement, and not one which was a condition precedent to the right of maintaining an action.

We start, then, with the proposition that the plaintiff had a right to bring suit any time after 60 days from the receipt of proper proofs of loss by the defendant, and it is clear that the present action was not brought until more than 60 days after the receipt of such proofs of loss.

But it is contended that the evidence which was offered and excluded in the court below was to the effect that an agreement for submission was entered into between the parties, and an award made. We find, however, in the agreement of submission, this express provision:

"It is further expressly understood and agreed that this submission to appraisers is not, and shall not be construed into, a waiver of any of the rights or defenses of either party."

By this provision the parties expressly reserved to themselves all the rights which they possessed under the policy, and the plaintiff thereby reserved the right of bringing suit, which he possessed independently of any award. This clause was evidently intended to guard against the waiver, by virtue of the submission, of any right possessed by either party.

The plaintiff further contends that this evidence was properly rejected, because, by the terms of the policy, before there should be any submission, the insurance company should first make an estimate of the loss as well as the insured, and then, if there were a disagreement, appraisers should be selected; that the evidence offered did not disclose that the insurance company had ever made any estimate of loss, but only the assured; and that, therefore, the conditions under which a submission could properly take place had not been complied with.

The policy further provides that the appraisers chosen "shall first select a competent and disinterested umpire," but in the evidence offered it did not appear that any such umpire was chosen.

Upon the whole, we are clearly of opinion that the court below committed no error in excluding the agreement to submit, the award, and the documents relating thereto.

Other assignments of error relate to the alleged improper admission of certain witnesses to testify as experts, on the ground of want of qualification. Whether a witness is qualified to testify as an expert is to be passed upon and determined by the court below. It is a question largely within the discretion of the presiding judge, and his determination is generally conclusive. Spring Co. v. Edgar, 99 U. S. 645; Tucker v. Railroad Co., 118 Mass. 546; Perkins v. Stickney, 132 Mass. 217; Lawrence v. Boston, 119 Mass. 126.

Nor do we find any error in the refusal to admit the evidence contained in the deposition of Samuel R. White. The evidence was plainly unintelligible, and liable to mislead, in the form in which it was presented.

As to the examination of the plaintiff, who was called as a witness by the defendant, the order of his examination was within the discretion of the court, and therefore affords no ground of error.

The charge of the presiding judge relating to overinsurance was correct, because the mortgagee clause contained a provision that

the mortgagee should not suffer for any act or neglect of the mortgagor or owner of the property. Consequently, if the mortgagor obtained more insurance than he was entitled to, it was his own act, and could not affect the rights of the mortgagee. The fact that the policies were in the possession of the mortgagee did not make him a party in obtaining any excess of insurance which may have existed.

With respect to the Concord policy which the evidence tended to show was obtained by the mortgagee or plaintiff, trustee, we think the court was right in charging the jury that, if such insurance was taken out at the request of the mortgagor, it would be his act, and not the act of the trustee; and, further, if they believed it was the act of the trustee, and that at the ime of issuing such policy the whole amount of insurance then existing, including the policy in question, did not exceed the amount permitted, it could not invalidate his claim under this policy. Upon the whole, we can find no error in the court below, and it follows that the exceptions must be overruled, and judgment affirmed.