## Illinois Steel Company v. Lawrence Koshinski.

### Gen. No. 4,832.

1. ORDINARY · CARE—*how question of exercise of, determined.* The fact as to what is negligence or want of ordinary care under particular circumstances is to be arrived at by considering all the dangerous surroundings under which the employes were working and the acts which caused the unusual occurrence which brought about the injury 'sued for.

2. INSTRUCTION—*when modification of, upon preponderance of evidence, appropriate.* An instruction which contains the clause "and you will return a verdict for the defendant, if the evidence is evenly balanced, or if it preponderates for the defendant or if you are in doubt as to its preponderance," is properly modified by changing the latter clause to "or if you are unable to determine as to its preponderance."

3. INSTRUCTION—*must not be argumentative.* An instruction argumentative in form is properly modified by the eradication of the argumentative portion.

4. VERDICT—*when not excessive.* A verdict rendered in an action for personal injuries for $2,500 is not excessive where it appears that the plaintiff at the time of his injury was thirty-two years of age, healthy before the accident and earning $1.80 per day, and was by reason of his accident ·severely burned, in the hospital for two months, had surgical operations for hernia, suffered pain and may have sustained a permanent injury.

Action in case for personal injuries. Appeal from the Circuit

Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed August 6, 1907.

JOHN H. GARNSEY, for appellant; KNAPP, HAYNIE & CAMPBELL, of counsel.

BARR, BARR & BARR, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action on the case brought by Lawrence Koshinski, appellee, against the Illinois Steel Company, appellant, for personal injuries received by appellee on October 16, 1905, caused by an explosion in appellant's steel mill at Joliet. The case went to the jury on the additional counts to the declaration, the jury being instructed there could be no recovery under the original declaration. The first additional count alleges that appellant was engaged in the manufacture of steel products and operated, as a part of its mills, a mill known as a converter, using therein certain vessels in which steel was heated or blown, known as Nos. 1, 2 and 3; and it avers that said vessels were moved by water power and were so constructed that hot air known as the blast was blown in from the bottom or sides of said vessels, and the water used to move said vessels was connected by pipes in which were valves by which the water could be cut off and turned on; that in the operation of said vessels they were partially filled with metal which was then heated to a high degree, and when sufficiently heated the metal was poured out of the vessels into a ladle; that at the time of the injury plaintiff was in the employ of defendant and was working upon an elevated platform several feet above the ground, in the exercise of due care for his own safety, when the defendant by one of its servants not a fellow-servant of plaintiff, carelessly and negligently shut off the water from vessel No. 3 so that it could not be properly operated and

before the water could be turned on the metal in the vessel No. 3 became overblown or overheated, and the defendant negligently caused other and cooler metal to be added to said vessel so overheated, and by reason of the negligence of defendant in shutting off said water and allowing said metal to be overblown and adding said cooler metal, an explosion was caused and the bottom of said vessel No. 3 blown out and a large quantity of molten metal struck plaintiff and knocked him off the platform, and he was greatly injured and burned and suffered a double hernia from the fall, etc. The second additional count alleges negligence in that defendant permitted the metal in one of said vessels to be overblown and immediately caused cooler metal to be added to it, etc. The third additional count alleges negligence in that defendant permitted the metal in one of said vessels to be overblown, and then added other cooler metal, thereby loading the vessel beyond its capacity, etc. There were three other additional counts one of which alleged careless and negligent operation. The jury returned a verdict for $2,500 upon which a judgment was rendered and the defendant appeals.

At the close of all the evidence the defendant moved to exclude all the testimony and requested that the jury be instructed to return a verdict of not guilty. The court overruled the motion and refused the instruction. This is relied on for error.

The evidence shows that the appellee was working on a mould-cleaning platform of the Bessemer mill of appellant, and that while thus employed he was injured by an explosion of the converting vessel known as No. 3. In the Bessemer process of making steel hot air is forced through a mass of molten metal, which causes the temperature to rise until the carbon and other impurities contained in the molten metal are burned out, leaving the steel. The ore is first melted, part in what is described as the cupola and part in the blast furnaces, then the two are combined and

mixed in what is called the mixer mill, and then the metal, still being in a molten state, is put into what are called the converter vessels. Vessel No. 3 was a twelve-ton vessel, that being the amount ordinarily put into it at one time. The converter that exploded is a large bottle-shaped vessel, about seven and one-half feet in diameter at the bottom and fifteen feet long, inside measurement, with a cone-shaped top, and has a cubical capacity of about seventy-five tons. It is suspended upon trunions in bearings, and is moved by hydraulic pressure by means of racks and gears attached to these trunions. The vessel can swing on the trunions in a semi-circle so that the molten metal may be poured out of it. In the bottom of the vessel are tubes or pipes called tuyeres made of refractory material through which the blast enters the vessel. The aperture at the mouth or nose of the vessel is about two feet nine inches in diameter. The bottom of the vessel is built on a steel shell of refractory material, and is fastened on by ten hangers, each capable of sustaining twenty tons weight. The vessels are relined on Sundays, and this accident happened on Monday night. When the vessel is to be charged with metal it is turned on its side, with the mouth to the north, by hydraulic machinery, and the appropriate amount of molten metal, about twelve tons, is poured in through the mouth, the charge being about eighteen inches deep when the vessel is lying horizontal. The vessel is then raised to a vertical position when the molten metal fills the bottom to a depth of thirteen and one-half inches; the blast is turned on, while this is being done, by the "steel blower" who stands on a platform 150 feet distant. The time required to blow a heat varies from seven to eighteen minutes, according to the evidence of Spencer, the superintendent of appellant's Bessemer department, and from six to seven minutes according to the evidence of Zaworski, once an employe of appellant, but now with the Superior Chemical Company. The "steel blower" controls

the time of the blast by hydraulic machinery, and sees when the heat is sufficiently blown by the color of the flame from the mouth of the vessel, which indicates to him when the impurities are burnt out. In making soft steel, after the heat is blown the vessel is turned to the south and the molten metal is poured into ladles and taken to the moulds. In blowing soft steel the safe capacity of the vessel is put in when it is first charged. In blowing hard steel about 1,800 pounds less than the full charge is in the first instance placed in the vessel, and the heat is blown as in making soft steel; then in place of the vessel being turned to the south and emptied, it is turned to the north and 1,500 to 1,800 pounds of the same kind of molten metal, as was put in at first, is added to recarbonize the steel, and the blast is again turned on and the vessel turned back to the south and emptied. At the time of the accident soft steel was being blown with a full heat in vessel No. 3. When the "steel blower" attempted to turn the vessel for the purpose of running the metal into the ladle, he found something was wrong with the hydraulic machinery and the vessel could not be moved. A whistle was blown indicating that there was trouble. The superintendent of the converter hurried to see what the trouble was, and finding the vessel could not be moved sought the machinist, but could not find him at the moment. After some delay it was discovered that the back pressure valve on vessel No. 3 had been closed by mistake when the machinists were working on vessel No. 2. The valve was then turned so that the machinery would operate; in the meantime the heat had been blowing five minutes or more too long, before the cause of the trouble had been discovered and remedied. The metal was thus overblown or burned, and to try to save it, the superintendent ordered the vessel turned back to the north and 1,800 pounds of cooler molten metal added. As the vessel was turned back to the south to empty it, and the blast turned on while it passed the upright

position in turning it over to empty it, the explosion occurred, scattering the molten metal over the mill. The appellee, who was working on a platform seven or eight feet high, was struck by a mass of the molten metal, knocked to the ground and his hands and face severely burned. He claims the most severe injury he received thereby is a double hernia and varicocele condition. It was shown by experts that after a heat is blown if the blast is continued through the metal it will be converted into a new substance—oxide of iron, and that this change occurs rapidly after the carbon has been burned out. The specific gravity of the iron oxide is very much less than that of the molten metal. It was testified that if molten metal which had not been converted is added to an overblown charge, it will sink to the bottom of the vessel and a chemical reaction, caused by the oxygen leaving the iron and combining with the impurities in the added metal, will occur and cause an explosion, while if cooler molten metal is added to a heat after the impurities are burned out but before oxidation there is no danger of explosion. The proof showed clearly that by the negligence of an employe of appellant a valve had been turned in the water service of converter number three (by which the machinery could not be worked), when the converter contained a full charge of metal for blowing soft steel, and not the lesser charge for burning hard steel, and that by the order of the superintendent an extra amount of metal was inserted over and above the usual charge. The superintendent testified that after the valve had failed to work the "steel blower" came to him 150 to 200 feet from where he had to be in order to turn the vessel, and wanted to know if more iron was being put in and would not go ahead unless the superintendent told him to do so. The steel blower, who had been a blower for appellant for ten years and assistant blower for ten or twelve years before that, and who said that during his experience he had only known of heats being overblown two or three times, hesitated

and questioned whether it was right to go ahead, and required a positive order before he would turn the converter back. The superintendent testified that fifteen pounds of thermit, which is composed of three-fourths oxide of iron and one part of powdered aluminum, introduced into a heat of ten or twelve tons would increase the temperature 500 degrees in twelve seconds without an explosion, and that the same effect can be produced by oxide of iron alone. The proof was that an unusual amount of molten metal was put in the vessel because of the overblowing of the steel. What the result of that might be, when the steel was overblown and converted into iron oxide and with the strong air pressure through the tuyeres that was necessary to keep the metal from backing into the tuyeres, is very problematical. The practical steel men themselves and the laboratory experts do not agree as to what are the reactions that take place under such circumstances. It was not ordinary care to permit the hydraulic machinery to get out of working order by turning a valve which shut off the water pressure, and thus render the machinery useless. The fact as to what is negligence or want of ordinary care under the circumstances is to be arrived at by considering all the dangerous surroundings under which the employes were working and the acts which caused the unusual occurrence which brought about the injuries sued for. The jury were justified under the evidence, when the extremely dangerous surroundings are considered, in finding appellant guilty of the negligence alleged.

While error is assigned on the admission and exclusion of evidence we have examined the evidence objected to and do not discover any error in that regard.

The appellant requested an instruction containing the clause, "And you will return a verdict for the defendant, if the evidence is evenly balanced, or if it preponderates for the defendant or if you are in doubt as to its preponderance." The court modified the latter part of the clause to read "or if you are unable to

determine as to its preponderance." It is said this instruction was approved in North Chicago Street R. R. v. Fitzgibbons, 180 Ill. 466. The instruction was there given on the part of the defendant, appellant in that case, hence the question of its propriety was not before the court, and it is only therein quoted to show that the law was given to the jury so favorably in behalf of the Street R. R. Co. that it had no cause of complaint. We think the modification by the court was correct, because the jury might believe the preponderance of the evidence was a certain way, but not be so sure of it as not to have a doubt. Some juror might suggest a doubt either reasonable or unreasonable. As requested the instruction was incorrect and misleading.

The seventh instruction requested for appellant began: "You are instructed that your answers to the questions propounded to you upon your examination before being accepted as jurors in this case are as binding upon you now as then. That by your oath as jurors to try this case you are bound to try it as to the facts," etc. The court erased the part of the instruction quoted and made it read: "It is your duty as jurors to try this case as to facts," etc. The part stricken out was argumentative, and the court gave the law fully in the modification. Chicago Union Traction Co. v. Goulding, 228 Ill. 164. The appellant's third refused instruction was given almost verbatim in its third given instruction, and its fourth refused instruction was included in the seventh given. It is sufficient if the instructions given fully cover all the points in the refused instruction asked, even if the court refuses the instructions asked and gives others of his own motion. Birmingham Fire Ins. Co. v. Pulver, 126 Ill. 329; Jacobson v. Gunzburg, 150 Ill. 135.

The only remaining question urged by the appellant is the amount of damages allowed appellee for his injuries. He was thirty-two years of age, healthy before the accident and earning $1.80 per day. He was

. severely burned, was in the hospital two months; has had surgical operations for hernia since the accident, which the evidence tended to show was caused by it. He still suffers pain and may always be troubled with the rupture. The trial court having approved of the verdict we see no reason for disturbing it. Finding no error the judgment is affirmed.

*Affirmed.*