## UNITED AUTOGRAPHIC REGISTER CO. v. WIGHT.

(Circuit Court of Appeals, Eighth Circuit. March 23, 1921. Rehearing Denied May 17, 1921.)

No. 5518.

1. **Master and servant &⟶36—Return of records held not condition precedent to suit for breach of contract.**

   A contract employing a sales manager, which required the manager at the termination of the contract to deliver to the employer all records relating to the business as a prerequisite to a final settlement, does not make the return of such records a condition precedent to the institution of a suit by the manager for damages for a breach of contract.

2. **Contracts &⟶327(1)—Conditions precedent to suit must be clearly expressed.**

   While contracting parties may, within certain limits, agree that specified acts shall be conditions precedent to suit on the contract, such provisions will not be presumed, but must be so expressed as to make clear such intention.

3. **Master and servant &⟶80(½)—Return of records held condition precedent to recovery of commissions.**

   Where a contract made the return of records relating to the employer's business by its sales manager a condition precedent to final settlement, the return of such records was essential before there could be recovery of commissions due under the contract.

4. **Master and servant &⟶31—Employer of sales manager held guilty of breach of contract.**

   Where the employer, acting under its erroneous construction of the contract with its sales manager, interfered with the activities of the manager in such vital respects as to make it substantially impossible for him to perform his contract, the employer was guilty of a wrongful breach, and the manager was entitled to bring suit therefor.

5. **Trial &⟶296(2)—Remarks of court on exception to charge held not to modify effect.**

   Where the court had charged the jury that a principal and agent were bound to deal fairly and squarely with each other, a remark by the court, in reply to an exception to the statement in the charge that the principal was obliged to state his reasons for discharging the agent, that such requirement was good business dealing, in fairness did not materially alter the effect of the charge.

6. **Master and servant &⟶44—Charge held to require statement of grounds for discharge.**

   In an action for breach of contract of employment, where the employer relied on several grounds of discharge as justification, and the court, in charging on the first ground, expressly stated that the employer, in discharging for that reason, must state the reason for discharge, and thereafter discussed other claimed grounds for discharge, with no statement regarding the giving of a reason for discharge, the effect of the charge was to require the giving of a reason for discharge in the case of discharge on any of the grounds stated, before the employer could rely thereon as a defense.

7. **Master and servant &⟶32—Statement of grounds for discharge unnecessary.**

   The discharge of one employed for a fixed term can be justified by the existence, at the time of discharge, of any sufficient ground therefor, without any legal necessity for the statement of such grounds.

---

&⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
. 272 F.—35

In Error to the District Court of the United States for the Eastern District of Missouri; John C. Pollock, Judge.

Action by Clarence E. Wight against the United Autographic Register Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

Claud D. Hall, of St. Louis, Mo. (R. B. Haughton, of St. Louis, Mo., on the brief), for plaintiff in error.

James R. Van Slyke, of St. Louis, Mo., for defendant in error.

Before HOOK and STONE, Circuit Judges, and JOHNSON, District Judge.

STONE, Circuit Judge. Error by defendant from a judgment for plaintiff in a suit upon a written contract.

Plaintiff alleged in his petition the execution by the parties of a written contract, under which he was to have the exclusive right to sell certain stationery supplies in territory specified, and to receive the commissions specified in said contract, according to the kind and character of goods sold and of place of sale; that plaintiff, by said agreement, was empowered to appoint under him assistant salesmen to work under his direction, at plaintiff's cost and expense; that defendant was to maintain an office for plaintiff, for his convenience and under his management and control, and defendant was to allow plaintiff each and every month during the term of said contract the sum of $80 to defray said office expenses, defendant, however, to pay the expense of rent and telephone; that said contract should remain in force and effect for a period of three years from May 1, 1915. He alleged performance by the parties to about September 6, 1917, but that thereafter defendant denied him the right to perform, although he was at all times willing to do so, and on or about that date and thereafter defendant breached the contract as follows: That defendant advised plaintiff on or about said date and thereafter that plaintiff would no longer have the right to act as general agent of defendant in charge of its said office in the city of St. Louis, and sell its goods and merchandise in the territories specified in said agreement; that said defendant further advised plaintiff that plaintiff would not thereafter have the exclusive right to represent defendant and sell its goods under said agreement in said territories, and defendant further advised plaintiff that plaintiff would no longer have the right to manage the office of defendant and control the salesmen employed to sell defendant's goods in said territories; and defendant further advised plaintiff that plaintiff would no longer have the right to make exclusive sales of defendant's goods in said territories for himself and those employed under him; that defendant advised plaintiff that plaintiff thereafter would not receive the $80 per month which he had been receiving to defray the expenses of said office; that defendant thereafter discontinued the payment of said amount, and that defendant advised plaintiff that plaintiff thereafter would not be allowed to receive, and that defendant would not pay to plaintiff, the commissions specified in said contract for the sale of goods in said territories, or ship into said territories in accordance with the terms of said contract.

The damages asked were for $2,804.28, commissions earned under the contract, and for general damage for breach of the contract.

The answer admitted execution of the contract, but denied that the effect thereof was to give plaintiff an exclusive agency, or to furnish plaintiff with an office and office allowance, or that defendant had, in any way, breached said contract. It alleged breaches of the contract by plaintiff, and his discharge therefor on or about September 6, 1917. It further alleged that plaintiff had earned commissions amounting to $2,031.87, but that he was not entitled to them, because of breaches of the contract, as follows: That plaintiff has not only refused, both before and since his discharge, to turn over route cards and copies thereof, business memoranda, price lists, orders, contracts, and correspondence placed in his hands, all of which it is important for defendant to secure to protect its business, and all of which plaintiff was obliged by the contract to return, and which have been demanded by defendant, but has retained same for the purpose of and was using the same in undermining defendant's business, and in building up a rival business for plaintiff and his associates; that for several months before September 6, 1917, he refused to make daily written reports, as required by the contract; that, instead of devoting his endeavors to the business and interests of defendant, he did, in the early part and middle of 1917, conceive and partially execute a plan to establish, in conjunction with others, an independent rival business, and in pursuance thereof secretly abstracted route cards, price lists, and documents belonging to defendant, and urged other of defendant's salesmen to join in the above plan, and likewise to abstract from defendant's papers in their possession business information, all resulting in great loss of time and great injury to defendant's business; that in violation of the terms of the contract plaintiff's conduct was reprehensible for several months prior to September 6, 1917, in that he not only betrayed defendant's confidence as above set forth, but that he sold certain property and appropriated the proceeds without the knowledge of defendant, he made fraudulent charges and entries in the books of defendant, he became intoxicated and visited disreputable places, to the neglect and demoralization of his business.

The reply pleaded waiver and estoppel as to prompt return of route cards, contracts, and correspondence with customers, as to filing copies of correspondence, and as to daily reports. Verdict and judgment was for $3,900.

The matters here urged for reversal of the judgment are refusal to direct a verdict for defendant, refusal of instructions as asked by defendant, and errors in the charge given.

As to the refusal to direct a verdict for defendant, the contentions may be summarized as follows: That plaintiff did not show performance of the contract; that the contract requirement to return all business records at the termination of the contract, which was not performed by plaintiff, was a condition precedent to recovery, and such condition was never waived. The contract provided that plaintiff—

"at the termination of this contract, to deliver over to the company all correspondence and letters and copies thereof emanating from the company to

the salesman or to any of its customers, or from the salesman to the company or to any customer, also all contracts with customers and copies thereof, route cards, price lists, and all documents pertaining to or containing information relative to the company's business, and all supplies of every kind and character that may be in his hands, as a prerequisite to a final settlement between the parties hereto."

The admitted facts affecting this contention are as follows: During the first half of 1917, Wight had made extra duplicate copies of route cards, orders, customers' contracts, records of and information concerning the business of the company. These copies were made for his personal use. He also had copies which extended back for some years, and comprised a complete outline of the company's business. They would have been valuable information for a competitor. The reasons given by Wight for making and retaining these records were so that he could better conduct the business, and have a record of his business, and get pay for the work done by him; but he kept many records long after he had been paid the commissions due from such sales, and although there were always copies of all such records in the files of the local office conducted by him. He retained all of the duplicate copies, refusing to surrender them on demand of the company, made after the institution of this suit. His counsel offered, during the trial, to produce these copies. There was no deposit of the same in court, or return thereof, or offer to return them.

[1, 2] The situation thus developed is of an agent, employed for a fixed term, bound to return to his employer certain important records before he can require final settlement; and alleged wrongful discharge during the term of employment; suit by the agent for commissions earned before discharge and for damages on account of the discharge; a retention by the agent of such records. The position of Wight is that the contract did not require a return of the records as a prerequisite to bringing a suit on the contract; that the company, having first breached the contract by discharging Wight, cannot avail itself of a subsequent breach on his part as a defense; that no final settlement had been tendered, but the company had refused such, and denied there was any settlement due Wight; that no demand therefor had been made prior to suit, and they were retained by Wight for the purpose of preparing his case for trial, and he had offered to return any papers belonging to the company. The contention that this clause of the contract was not intended as a prerequisite or condition precedent to suit upon the contract for breach is well taken. While contracting parties may, within certain limits, agree that specified things shall be conditions precedent to suit upon the contract, such provisions will not be presumed, but must be so expressed as to make clear such intention. Hamilton v. Insurance Co., 137 U. S. 370, 385, 11 Sup. Ct. 133, 34 L. Ed. 708; Mutual Fire Insurance Co. v. Alvord, 61 Fed. 752, 9 C. C. A. 623; Green v. American Cotton Co. (C. C.) 112 Fed. 743; Smith v. Accident Association (C. C.) 51 Fed. 520; Crossley v. Insurance Co. (C. C.) 27 Fed. 30. Also see Summerfield v. Insurance Co. (C. C.) 62 Fed. 249, 257; Connecticut Fire Insurance Co. v. Hamilton, 59 Fed. 258, 269, 8 C. C. A. 114; Perkins v. U. S. Electric Light Co.

(C. C.) 16 Fed. 513. The other contentions, that this clause of the contact is not available as a defense, need not be considered, in view of the above expressed determination that such clause was not intended to so operate. For the above reasons, we conclude that there was no error in overruling the request for a directed verdict.

[3] There is an important legal distinction between contract provisions, performance of which are prerequisites to the bringing of an action on the contract, and contract provisions, performance of which are prerequisites to recovery in a suit on the contract. We hold above that the return of the papers and copies, as provided by this contract, is not a prerequisite to the bringing of this action upon the contract. We now consider whether proof of such return is a prerequisite to recovery. By express language in the contract, the return of the papers and copies is "a prerequisite to a final settlement between the parties hereto." One of the two purposes of this action is to secure a "final settlement" of commissions earned under the contract. The right to such a settlement, on the one hand, and the right to the return of the papers and copies, on the other, are reciprocal dependent obligations, the former dependent upon performance of the latter. There can, therefore, be no recovery, on final settlement, of these commissions, except upon a showing that all papers and copies covered by the contract requirement have been returned to the company. The other purpose of this suit is to recover damages for breach of the contract. We do not construe "final settlement," as used in the contract, to include general damages arising from a breach of the contract. The result is, therefore, that earned commissions can be recovered only if return of the papers and copies, required in the contract, be shown; that no such showing is necessary to recover general damages for the alleged breach of contract.

The same reasons govern errors predicated on refusals to charge the jury in line with the above theory of the company as to the effect of this provision of the contract. The company contends that several other errors were made in refusals to charge and in the charge as made. As to such refusals to charge, the specifications are that the court refused to charge that there could be no recovery under the particular circumstances requested, as follows: If Wight retained the company's business records for the purpose of using them and associating himself with others or conspiring with others to use them in a competing business; if he retained the records, and did not make daily reports as requested by the company; if he kept false accounts, and misappropriated the money of the company. We have carefully examined the instructions asked in the above respects, and a comparison with the charge as given convinces that they were sufficiently covered therein, in so far as they were proper within the issues of the case. It is also contended that the court should have limited the amount of commissions earned up to the time the contract was breached to an amount which was admitted by both parties to have been so earned. An examination of the charge reveals that the court clearly limited the amount of recovery for such earned commissions to the admitted amount. The fact that the action was also for damages, because of

the breach, accounts for the verdict exceeding the amount of commissions concededly earned up to the time of breach.

The remaining contentions as to refusals to charge and the objection to a portion of the charge relate to the same matter, and will be considered together. The instructions asked were in substance that, if sufficient grounds existed for the discharge of Wight at the time he was discharged, it was immaterial what motive caused the company to discharge him, or whether it knew of the existence of any or all of the grounds for discharge at that time, or whether it told him the real reason for his discharge, or any reason whatsoever therefor. The charge as given does not separate the matter now considered, but mingles it in connection with the different facts relied upon by the company to justify discharge. To get the true force of the charge in that regard it is therefore necessary to set out an extended portion of the charge, in which is italicized the passages particularly referring to this matter. The portion is as follows:

"Now, gentlemen of the jury, a contract of this character between a principal and an agent is a contract which involves the personal relations of the parties. A contract of that character carries with it one of trust and confidence. *So it was obligatory upon the defendant company that employed this man to treat him honestly, fairly, and squarely in dealing with him with regard to its business.* On the other hand, it was the duty of the plaintiff to honestly treat his employer, to respect the confidence of his employer, and be faithful to his employer. And where parties to a contract of this character fail in their duty which they owe under such a contract, they may be relieved, without damages, from further performance of the contract.

"You will notice in this contract, as I have read, that the defendant expressly reserves in the contract certain grounds upon which it could terminate this contract. It is claimed by the defendant it terminated the contract because the plaintiff refused to comply with the terms of the contract in making daily reports. The contract to a certain extent provides what shall be in those reports; and in making the contract of employment the plaintiff agreed that he would comply with the condition of the contract in making the reports. If he did make daily reports, or the reports required by the contract, in a reasonable, efficient, and proper manner, as provided by the contract, the defendant would not be justified in terminating this contract. So one question for you to determine in this case will be: Has the defendant shown by the greater weight of the evidence in the case that the plaintiff refused to be bound by its contract in the making of these daily reports? If so, he broke his contract, and they would be relieved from further performance of the contract on their behalf, *if for that ground they refused to longer comply with the contract.* Although you may find that he did not make the reports as provided for in this contract, *yet if it was on other grounds that the defendant refused to allow him to carry out his contract,* then that is not a matter for consideration; but if it was on that ground, if he did fail to abide by his contract, carry it out faithfully and honestly, but intentionally failed to make these reports as required by the contract, then they would have a right, *if they placed it on that ground,* to terminate the contract.

"It was the duty of the defendant, *if they did ascertain any ground* upon which the plaintiff could no longer be retained as their agent, to remove him from his agency, and tell him that they did remove him from the agency and *why they did.* They cannot induce him to go along under the contract with the idea that they would insist upon carrying it out, and they insisting that he should be bound by it, and they at the same time intending not to carry it out, because that is one of the obligations of a principal to an agent, that when they discharge him they shall be honest and fair in dealing with him, and tell him he is discharged, or take such action as will show him plainly that he is discharged.

"Again, a principal has the right, independently of what is expressed in this contract, to expect of their agent such reasonable conduct in affairs, in dealing with their property and money, as one has to expect from an honest man. An agent cannot steal the property of his principal under a contract, and then claim defense of the contract.

"One of the charges made in this case as a ground by the defendant to relieve the plaintiff from further discharge of his duties was dishonesty under the contract. The burden of proof in these matters I say is on the defendant. If the plaintiff in this case conducted himself as a reasonable, honest man in dealing with the property of the defendant as its agent, then there was no ground to relieve him of the performance of his contract. If, on the other hand, you find by the greater weight of the evidence he was not honest in his dealings with the property of his principal, the defendant in this case, that would give them the right to terminate the contract *on that ground.*

"Again, of course, there are some cases where a higher standard of morality would be expected than in other cases. That all depends upon the character of the work to be performed. They had the right to demand of their agent, as he was their trusted representative, that his moral conduct in regard to the drinking of intoxicating liquors and his association with others would be such as not to bring upon the business or upon their representative the disapprobation of the public to their industry. So this man was under obligations to the defendant to so conduct the affairs of that office in his dealings with the affairs of that office, that it would redound to the interest of his principal, and not to its detriment in that regard; and if you believe that in any respect such as here charged his conduct became vicious or reprehensible, defendant reserved the right to discharge him' *for that reason* from further performance of this contract.

"Again, it is charged by the defendant in this case that the plaintiff was not loyal to it as its representative. As I have said, a contract of this kind imparts a fiduciary or trusteeship relation between the parties. If the plaintiff in this case entered into competition with the defendant's business, in attempting for his own benefit or the benefit of others, entered into a conspiracy, as charged by the defendant here, to damage the business of the plaintiff by engaging in a similar business on his own account or with others in competition with the defendant to its damage and injury while working for and representing this company, that was not such loyalty to the defendant company as the defendant company has a right to expect; and if it discharged him, that would be on the part of a trusted agent under the terms of this contract what we would call reprehensible in one occupying fiduciary relations and entitled defendant to discharge him. If defendant discharged him *for that reason* from further performance of this contract, they would have in law a right to so terminate the contract without incurring any obligation to pay him further under the contract."

[4] As shown by the evidence, the discharge was not accomplished by a direct dismissal, but by such limitation of and interference with the activities of Wight as to result in making it impossible for him to fully perform on his part or to secure the substantial benefits given him by the contract. The company based this limitation and interference solely on the ground of its construction of the terms of the contract, at all times insisting that Wight continue performance of the contract as it construed it. The trial court correctly held that the construction placed upon the contract by the company was erroneous. Therefore the legal situation of the parties arising from this action by the company was that it had vitally breached the contract by making its further performance by Wight impossible, and such breach gave him the right to treat this conduct of the company as constituting a vital breach, and to bring suit therefor if he desired. This he did.

[5] Wight contends that, if there was error in the charge, in that a portion thereof required that the company should, at the time of discharge, inform him as to the reason therefor, yet this was cured in the charge in two ways. These two are, first, by a statement made by the court in response to an exception to the charge by the company; and, second, that the court specifically stated in other portions of the charge that no such statement of reason was necessary. The exceptions and statement of the court referred to are as follows:

"There was error in charging that upon plaintiff's discharge the defendant was obliged to state to plaintiff the ground or grounds upon which plaintiff was discharged.

"The Court: I merely mean to say that that is good business dealing, in fairness.

"Mr. Hall: We desire to save our exception.

"(5) Or that plaintiff could be discharged only upon the reason of his discharge being stated."

Having in mind the portion of the charge above quoted, with particular reference to the portion first italicized therein, we can see no modification of that charge by the remark of the court, just quoted.

[6] As to the second proposition, the argument is that the court, in referring to the dishonesty, immoral conduct, and disloyalty defenses, stated that the existence of any of those facts would justify discharge, without statement of reason therefor. In gauging the effect upon the jury of these portions, we must consider them in their connection with other naturally related parts of the charge. The portions quoted above constitute the entire charge in this respect. Considering these portions in their entirety, the very most that could be said for this argument is that the court expressly required statement of reason for discharge in connection with the daily reports; that it followed this with a general statement that such reason must be given at time of discharge; and that this general statement was followed by discussion of other claimed grounds for discharge, with no statement regarding the giving of a reason for discharge. The most probable and natural conception of the charge would be to carry the application of the above general statement in the charge to the specific instances which followed it. We think the true effect of the charge was, and remained, that to entitle the company to the benefit of any of the grounds for discharge which it urged in its pleadings and evidence, the company must have informed Wight, at the time of discharge, that he was discharged for those reasons. As there was no contention or showing that he had been so informed, the effect of the instruction was to eliminate the entire defense of the company.

[7] Therefore, unless it is the law that reasons for discharge must be stated, the instruction was erroneous, and resulted in substantial injury to the company. Counsel for Wight are silent upon this point. We think the law is that a discharge can be justified by the existence, at the time of discharge, of any sufficient ground therefor, without any legal necessity for the statement of such grounds. 26 Cyc. 993, and many authorities cited in the notes thereto. As no reason was here stated by the company for the discharge, we do not consider

whether, if some reasons had been given, such action would amount to waiver of others then known to the employer.

For this error in the charge, the judgment must be and is reversed, and a new trial ordered.