(No. 11524.—Decree affirmed.)

THE STANDARD BREWERY, Defendant in Error, *vs.* PAT-
RICK I. CREEDON *et al.*—(PATRICK I. CREEDON, Plain-
tiff in Error.)

*Opinion filed April 17, 1918—Rehearing denied June 5, 1918.*

1. LANDLORD AND TENANT—*when rule that landlord may treat tenant holding over as trespasser does not apply—estoppel.* Where a tenant for years holds over without any new agreement, the land-lord, at his election, may treat the tenant as a trespasser or as a tenant for another year upon the same terms as before; but the rule does not apply where there is a new contract, and where it has been decided by a decree of court that a new relation of land-lord and tenant arose at the expiration of the first term, such de-cree, while unreversed, will estop the landlord from claiming that the tenant is holding over or a trespasser.

2. SAME—*when pleadings and decrees in other suits are admis-sible in suit on guaranty to lease.* The pleadings and the decrees in actions between the tenant and the assignee of the lessor, by which the relation of landlord and tenant for a second term un-der a new agreement is established between the parties, are admis-sible in a suit by said assignee against a guarantor of the lease for the first term, although the guarantor was not a party to such decrees or proceedings.

3. SAME—*when there can be no recovery on guaranty.* Where a tenant has complied with all the covenants in the lease for the first five-year term, and it is established, both by judicial proceed-ings and the acts of the parties, that his possession for the second five-year term was as a tenant and not as a trespasser or holdover, there can be no recovery against the guarantor of the first term on the theory that the possession was unlawfully withheld after the first term and that the landlord was entitled, under the first-term lease, to a penalty of $10 per day.

4. CORPORATIONS—*when corporation cannot claim guaranty is unauthorized or ultra vires.* Where the consideration for a con-tract by a brewery corporation guaranteeing a lease is the agree-

ment by the lessee to maintain a saloon where no beer except that made by the guarantor shall be sold, the corporation cannot claim the guaranty was unauthorized or *ultra vires,* where the lessee kept its agreement and the corporation, with full knowledge of the contract, ratified its provisions.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

JOSEPH P. MAHONEY, (J. KENTNER ELLIOTT, of counsel,) for plaintiff in error.

CASTLE, WILLIAMS, LONG & CASTLE, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Alphonso L. Creedon, brother of Patrick I. Creedon, plaintiff in error, was the owner of two certain vacant lots in the city of Chicago in 1903. On April 12, 1903, he entered into a written contract with the Harugari Maennerchor Society, (hereinafter referred to as the society,) by which it was agreed that Creedon would commission the society to construct a building on said lots according to certain agreed plans and specifications. Creedon was to furnish $11,000, to be raised by a trust deed on the premises and to be disbursed on the certificates of the architect. Creedon was also to pay all taxes levied against the premises for street improvements, and was to pay the society for moneys to be advanced by it in the construction of said building an amount not to exceed $5000, $2000 thereof to become due and payable seven and a half years from the first day of August, 1903, and the remainder thereof on or before the first day of August, 1913, with interest on the said sums at the rate of six per cent, payable semiannually. In consideration of the foregoing the society was to complete the building as agreed and was to furnish all

moneys necessary for the proper construction and completion thereof except as aforesaid, and was to furnish all labor and material, pay all the permits, architect's fees, all services for the proper and safe construction of the building, (excepting the fees for a survey,) the general taxes assessed subsequent to the year 1902, all assessments for sidewalks abutting the premises, all water taxes, and was to comply with all ordinances of the health department, to make all necessary repairs, to keep the building in good condition during the life of the agreement, and to keep the building insured against loss by fire during its construction and on its completion to have the same insured for not less than $16,000. The society further agreed to furnish Creedon a bond in a sum to be mutually agreed upon, guaranteeing the satisfactory completion of the building within six months from the date of the agreement, and to further guarantee that all bills and claims for labor and materials furnished for the building would be fully paid. Creedon further agreed to lease the premises and improvements to the society for a period of twenty years from the first day of August, 1903, to and including the 31st day of July, 1923, at an annual rental of $1650 for the first two years of said period and $1800 per annum for the remaining eighteen years, to be paid in monthly installments of equal amounts, and to be paid in advance, beginning with August 1, 1903. The society further agreed that the rental value of the premises should be estimated at the close of each and every five-year period during the entire term of the agreement, by a board of three,—one member thereof to be selected by the parties to the agreement, and should the two appraisers fail to agree upon the rental value for any period they were to select the third appraiser, and a majority decision thereof was to determine the rental value of the premises except for the first five-year period. The decision of the board was to be final and binding on the parties to the agreement, and the expenses of the arbitration were to be borne equally

by the parties. In case the board should find the rental value to be in excess of $1800 per annum the society covenanted to pay such increased amount in addition to the rental value fixed by the agreement, and it was further agreed by the parties that such rental value should not be. less than $1800 per annum after the first two years of the twenty-year period. The society also agreed to lease the premises in accordance with the foregoing terms, and to enter into a written lease with Creedon at the commencement of each five-year period subsequent to the first five-year period, and was to furnish bonds in such sums as demanded by Creedon, guaranteeing the payment of rents for the first five-year period, and for the second five-year period if demanded by Creedon. The society further agreed to forfeit all moneys advanced in the construction of the building in· the event of its failure to carry out each and every covenant and agreement in said contract contained.

On June 9, 1903, Creedon and the society executed a written lease on said premises, "to be occupied for society halls, a club house, stores and offices and for no other purpose whatever." This lease covered the first five years beginning August 1, 1903, and extending to and including July 31, 1908. The amount of the rent named is the same as that named in the contract and was payable in the same manner. One of the covenants of this lease provided: "At termination of this lease, by lapse of time or otherwise, [lessee] to yield up immediate possession to said party of the first part, and failing so to do, to pay as liquidated damages, for the whole time such possession is withheld, the sum of ten ($10) dollars per day; but the provisions of this clause shall not be held as a waiver by said first party of any right of re-entry as hereinafter set forth; nor shall the receipt of said rent, or any part thereof, or any other act in apparent affirmance of the tenancy, operate as a waiver of the right to forfeit this lease and the terms hereby granted for the period still unexpired, for any breach of

any of the covenants herein." On the back of said lease appears indorsed the following guaranty, signed by the Standard Brewery, by August J. Dewes, vice-president, and witnessed by A. H. Dressel, and attested by the seal of the brewery corporation, to-wit: "For value received we hereby guarantee the payment of the rent and the performance of the covenants by the party of the second part in the within lease covenanted and agreed, in manner and form as in said lease provided." The guaranty bears date June 10, 1903.

On June 15, 1903, the society entered into a bond to Alphonso L. Creedon, with Fritz Nebel as surety, conditioned for the payment of all sums which shall become due to Creedon as rent from August 1, 1908, to July 31, 1913, under and by virtue of "a certain agreement entered into by and between him and said society on the .... day of June, 1903, and under and by virtue of a lease to be entered into by said parties for said period, and also to pay all other obligations arising under said agreement or said lease during said period." On November 2, 1908, Creedon conveyed said real estate and assigned his interest in the lease and guaranty and in the bond guaranteeing the rent for the second five-year period to plaintiff in error, Patrick I. Creedon.

Alphonso L. Creedon and the society had been unable to agree on the rental value of said premises for the second five-year period beginning August 1, 1908, and ending July 31, 1913. He and the society had chosen their appraisers to fix such rent, and the appraisers were unable to agree as to the rent or upon the third appraiser. Plaintiff in error ratified the choice of appraiser made by his brother; and no third person having been agreed upon, on March 25, 1909, he instituted a forcible detainer proceeding against the society in the municipal court of Chicago to recover possession of said premises. The society then filed a bill in the circuit court of Cook county June 9, 1909, against

A. L. Creedon and Patrick I. Creedon for the specific performance of said contract of April 12, 1903, and for the fixing of the fair and reasonable rental value of said premises for the second five-year period, and to compel Patrick I. Creedon to execute a lease for said period and to enjoin him from prosecuting his suit for possession. Patrick I. Creedon then answered said bill and filed a cross-bill on October 7, 1910, against the society and A. L. Creedon for the cancellation of the contract between A. L. Creedon and the society, and to compel the society to deliver to him the immediate possession of the premises and that all interest of the society therein may be canceled, and also asking that the society be decreed to forthwith pay to him such sum or sums of money, "as rent or liquidated damages," as the court shall find to be due. A decree was entered in that case fixing the rental value of the premises for the second five-year period at $175 per month and ordering the society to pay to plaintiff in error said rental, amounting to $10,500, and $1314.16 interest and $239.69 on account of taxes paid by Creedon, amounting in all to $12,053.85, and that the society was entitled to a credit of $5033.75, leaving a net balance due of $7020.10; that upon the payment of the last amount named Creedon should execute and deliver to the society a lease for the second five-year period, and that said sum was to be paid within two days from the date of the decree, or on July 18, 1913. The court further found that Creedon was entitled to interest at five per cent per annum on each monthly installment of $175 of the second five-year period of the lease matured since August 1, 1908; that the society had not acted in good faith in endeavoring to have the rental value for the second five-year period fixed and in selecting or consenting to the appointment of the third arbitrator who would be fair and impartial in the fixing of the rent, and that as a result of such bad faith no rental value for said period was fixed by the appraisers; that the society failed and refused to make the necessary

repairs on the building and failed to pay the taxes thereon
for the year 1912, and failed to keep the building insured
as agreed; that the covenant in said contract for the re-
payment of the $5000 advanced by the society for the con-
struction of the building does not run with the land and
is not a lien thereon or on the improvements; that by the
provisions of said contract the society forfeits all moneys
advanced in the construction of the building in the event
of its failure to carry out the covenants of the contract;
that unless said sum of $7020.10 decreed to be due as rents
on the five-year period be paid within two days the contract
of April 12, 1903, and all other contracts entered into by
A. L. Creedon and the society in regard to the premises,
shall be annulled and canceled and all interest or pretended
interest of the society in said premises be canceled. The
amounts decreed as rents due for the second five-year period
not having been paid by the society as ordered by the court,
a further and final decree was entered on July 19, 1913,
reciting the failure to satisfy and pay the amount of the
decree, and ordering and decreeing that in addition to the
sum of $7020.10 the society pay the further sum of $100
for solicitor's fees for dissolving injunction, etc.; that the
contract dated April 12, 1903, and all contracts or alleged
contracts entered into between the society and A. L. Cree-
don relative to the premises, be surrendered by the society
and canceled and held for naught and its interest in the
premises canceled and held for naught; that it surrender
possession of the premises to Patrick I. Creedon, and the
society be perpetually enjoined from further asserting or
claiming any interest in said premises, and a writ of resti-
tution was awarded.

On June 16, 1914, Patrick I. Creedon filed in the su-
perior court of Cook county against Fritz Nebel a bill to
reform the bond of date June 15, 1903, executed by the so-
ciety, with Nebel as surety, in favor of A. L. Creedon, and
to correct the mistake in said bond so that it would recite

that the original agreement was entered into by A. L. Creedon and the society on April 12, 1903, instead of "the ..... day of June, 1903," and for a decree against Nebel that he pay to Patrick I. Creedon "the reasonable rental value of said premises from August 1, 1908, to July 31, 1913, and expenses for repairs and for taxes," etc., secured by said bond. That bill is still pending and undetermined in the superior court.

The plaintiff in error, Patrick I. Creedon, on September 24, 1913, brought suit in the municipal court of Chicago against defendant in error, the Standard Brewery, to recover on its guaranty of the lease for the first five-year period the sum of $10 per day from August 1, 1908, to February 28, 1913,—the time covering the second five-year period,—as liquidated damages provided by the lease of June 9, 1903, for withholding possession of said premises for the second five-year period, against the covenants and provisions of the first lease. The total amount claimed and sued for in that suit was $16,730, less $4000 "paid by said Harugari Maennerchor Society." After a jury trial, in which the verdict was set aside by the court and a new trial granted, defendant in error on April 9, 1915, filed a bill in the circuit court of Cook county to enjoin the prosecution of said suit in the municipal court, and also praying for a reformation of the alleged guaranty on the ground of fraud and mistake and for cancellation of the same if not so reformed, on the ground that all matters between the lessor and lessee in said lease covering the first five-year period had been adjudicated and the lease in controversy canceled, and upon the further ground that all rent and all other obligations under the lease had been paid and settled by the society, and that for those reasons the guarantor of the first lease (the defendant in error) had been discharged. Plaintiff in error filed an answer and a cross-bill, in which he again set up the guaranty and the provisions of forfeiture in the first lease and asked that he be

decreed the amount of his liquidated damages at $10 per day, etc., against the defendant in error. The court rendered a decree, in which it was found, in substance, that the society remained in possession of the premises during the second five-year period of the twenty-year contract after the termination of the first lease by virtue of the contract of April 12, 1903, and not as a holdover under the lease of June 9, 1903, and that the rental for the first five-year period, and all other obligations under the first five-year lease, having been paid by the society, there was no liability against defendant in error, and it perpetually enjoined the further prosecution of the municipal court suit. On appeal to the Appellate Court the decree of the circuit court was affirmed, and the cause was brought to this court on a writ of *certiorari.*

In addition to the foregoing facts stated, the record discloses that the society occupied the premises in question for the first five-year period mentioned in the contract for leasing and paid all rent and discharged all obligations of the first lease and of the contract up to the end of that period. The contention of the plaintiff in error is that the society breached its contract of lease for that five-year period by failing to deliver up to the plaintiff in error the possession of the premises at the end of that five years, as provided in the lease, and that the society was a trespasser from and after the expiration of that lease so long as it remained in possession of the premises thereafter, and that the society by reason thereof became liable to plaintiff in error for the $10 per day liquidated damages for the entire second five-year period mentioned in the original contract for leasing. As a matter of fact the court was clearly warranted in finding from the evidence, as it did, that plaintiff in error treated the society as continuing in possession of the premises as a tenant for the second five-year period from and after the termination of the first five-year rental period. The society, also, is shown by all its acts and conduct from

and after the first five-year period to have continued in the occupancy of the premises as the tenant of plaintiff in error under the provisions of the contract of April 12, 1903. Plaintiff in error was bound by that contract to lease the premises for the second five-year period, and the society was bound by the same agreement to accept such a lease and to pay such a rental therefor as the arbitrators found to be the reasonable rental value for that period, that rent to be not less than $150 per month. Plaintiff in error demanded of the society $300 per month for that period. The society refused to pay more than $150 per month. Failing to agree on the rent for the second five-year period, Alphonso L. Creedon and the society appointed their arbitrators before the first five-year rental period ended, and the arbitrators having failed to agree upon the rental value before plaintiff in error became owner of the premises, he ratified the selection of the arbitrator by his brother after he bought the premises. The arbitrators still continued their efforts to agree on the rental or on the third arbitrator. In the litigation that immediately followed the final failure of the arbitrators to agree, between the society and plaintiff in error in the municipal and circuit courts, as heretofore set forth in this opinion, the relation existing between plaintiff in error and the society was clearly fixed as that of landlord and tenant for the second five-year period, in accordance with the provisions of the contract of April 12, 1903, and the rent was fixed at $175 per month. The society paid into court from time to time, upon cross-petitions of plaintiff in error in the circuit court, more than $5000 to pay such rent and other charges for taxes, etc., as the court found to be certainly due him at those times, and found a total balance as rent due for the second five-year period, at $175 per month, to be $7020.10, and failing to pay said sum the final decree of the circuit court canceling all contracts entered into between Alphonso L. Creedon and the society and all its interest in the premises was entered

July 19, 1913, before the present litigation between plaintiff in error and defendant in error was begun. Those decrees in the circuit court between plaintiff in error and the society are still in full force and no writ of error or appeal is pending for the review of those decrees. Those decrees permanently fixed the relation of landlord and tenant between the plaintiff in error and the society for the second five-year period under the contract of April 12, 1903, and definitely settled the final amount due as rent from the society to the plaintiff in error for that period, and annulled and canceled the contract and the lease for the first five-year period. If any further confirmation of the relation of landlord and tenant between plaintiff in error and the society for the second five-year period is required, it is to be found in his further act of proceeding against Nebel in the superior court on the bond of the society and Nebel to recover the amount due for the second five-year period.

As clearly appears from the foregoing, plaintiff in error is estopped to now claim in the instant case that the society was a trespasser and that he is entitled to collect the $10 a day from the society, or from the defendant in error, its guarantor, or to claim any breach whatever by the society of any covenant or agreement in the lease for the first five-year period. That contract or lease was treated by both parties to it, by their conduct, as ended and all covenants and agreements therein performed. Having elected to sue for rent or such damages as the circuit court might see fit to give him in his cross-bill in the circuit court, and the circuit court having decided to fix the rent and decree him rent for the entire second five-year period, plaintiff in error cannot now sue the society or its guarantor on the first lease for liquidated or other damages therein named. Where a tenant for a year or years holds over after the expiration of his lease without having made any new agreement with his landlord under which such holding over takes place, the landlord, at his election, may treat the tenant as a trespasser

or as a tenant for another year upon the same terms as in the original lease. That rule, however, does not apply where there is a new contract between the landlord and tenant under which the latter remains in possession. *(Clinton Wire Cloth Co.* v. *Gardner,* 99 Ill. 151.) Where it has been definitely decided by a decision of a court that a new and different relation of landlord and tenant exists between the parties to a lease that has expired, such a decree will have the effect to estop either of the parties from claiming that the tenant is a holdover or a trespasser.

The pleadings and the decrees in the other cases in which plaintiff in error was a party were competent evidence to establish the relation of landlord and tenant for the second five-year period under a different agreement, although the defendant in error was not a party to such proceedings. *(Prescott* v. *Fisher,* 22 Ill. 390.) There was no breach of the lease guaranteed by defendant in error proven, and consequently no liability of defendant in error on its guaranty, and the court properly so found and decreed.

The evidence in this record shows that the consideration for defendant in error guaranteeing the lease and the full performance thereof was the promise of the society to rent a part of the premises to a third party for a saloon and that the society would require the party who kept the saloon to sell only the beer brewed by the defendant in error. This agreement was carried out on the part of the society, and the defendant in error afterwards, with full knowledge of the contract, ratified that agreement. The defendant in error cannot successfully defend against its guaranty on the ground that its vice-president had no authority to execute the guaranty or on the ground that the contract was *ultra vires. Kraft* v. *West Side Brewery Co.* 219 Ill. 205; *Heims Brewing Co.* v. *Flannery,* 137 id. 309; 2 Thompson on Corporations, sec. 2004.

The decree of the Appellate Court is affirmed.

*Decree affirmed.*