Elizabeth Jane Genslinger, Executrix of the last will and testament of Charles Henry Genslinger, Deceased, Appellee, v. New Illinois Athletic Club of Chicago, Appellant.

Gen. No. 33,257.

Opinion filed April 1, 1929. Rehearing denied April 13, 1929.

SIMS, WELCH, GODMAN & STRANSKY, for appellant; FRANKLIN J. STRANSKY, of counsel.

HUME & KENNEDY and CUTTING, MOORE & SIDLEY, for appellee; CHARLES S. CUTTING and FRANK L. HUME, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by the defendant from a judgment in the sum of $194,000 entered upon the verdict of a jury in favor of the plaintiff and against the defendant in an action in trover after motions for a new trial and in arrest of judgment had been overruled.

The cause comes to this court by transfer from the Supreme Court, to which defendant appealed upon the theory that certain constitutional questions were involved. *Genslinger v. New Illinois Athletic Club,* 332 Ill. 316. The Supreme Court held that it was without jurisdiction to hear and decide the cause, and the same was transferred pursuant to statute. The controversy between these parties had its origin in events which

transpired about 25 years ago, and in one of its earlier phases was considered by this court in *New Illinois Athletic Club v. Genslinger,* 211 Ill. App. 220. The situation can perhaps be best described by a narration of the events as they occurred.

The defendant club is a social organization incorporated under the laws of Illinois on November 11, 1904, as a corporation not for pecuniary profit. Charles H. Genslinger was the first secretary of the club and prominently identified with its organization and promotion. On December 3, 1904, the board of directors of the club passed a resolution providing in substance that, in consideration for his services rendered and to be rendered, he should receive 1,000 certificates of membership when the membership of the club reached 5,000, the first transfer of the membership from him to be exempt from the usual transfer fee. The resolution also provided that in addition he should be paid a commission of 6 per cent upon other new memberships up to 8,000 members. Genslinger held a life membership in the club which he retained until his death.

Controversy arose between Genslinger and the club concerning his compensation. He resigned as secretary. Afterwards he sued in the municipal court demanding damages on account of the breach of his contract of employment by the club to the amount of $200,000. The club filed a bill in equity against Genslinger for an accounting on August 10, 1913. The bill set up the pendency of the suit in the municipal court and prayed that its further prosecution might be enjoined. The bill set up that the suit in the municipal court was by Genslinger on his contract with the club, the terms of which were averred in the bill. Genslinger answered, admitting some of the allegations of the bill but denying material terms of the contract as averred. Replication was filed by the club on March 12, 1914.

On May 5, 1916, more than three years after the filing of the original bill, the complainant filed, in lieu of its original bill, an amended and re-engrossed bill of complaint, in which for the first time it alleged that the contract of employment between the club and Genslinger had been canceled by mutual agreement on July 28, 1905. This amended bill also averred the existence of the suit in the municipal court and prayed that its further prosecution might be enjoined and an accounting had between the club and the defendant. Genslinger answered the bill again denying the terms of the contract as alleged and denying the cancellation of the resolution of the board of directors on July 28, 1905, as alleged. Replication was filed on July 1, 1916, and an order was thereafter entered that the answer to the amended bill should stand as a cross-bill; that the bill of complaint should stand as the answer of complainant to the cross-bill, and that the answer should be regarded as denying all of the allegations of the cross-bill inconsistent with the bill of complaint.

The cause was referred to a master, who reported finding the facts and the law in favor of the club and against Genslinger, and later on July 14, 1917, the court, overruling exceptions of Genslinger, entered a decree finding the equities in favor of the club; that the terms of the contract were as averred by the club in its amended bill; that the resolution of the board of directors had been canceled by mutual agreement by way of compromise; that Genslinger was not entitled to further compensation other than that which had already been paid, and that his cross-bill should be dismissed for want of equity.

Genslinger appealed to this court. *New Illinois Athletic Club v. Genslinger*, 211 Ill. App. 220. This court, according to its usual practice in such cases, weighed the evidence and concluded that the averment of the amended bill to the effect that the original con-

tract between the club and Genslinger had been canceled by mutual consent on July 28, 1905, was not sustained by the evidence. As a careful reading of the opinion will disclose, that conclusion was not based, as contended, solely upon a question of veracity between Genslinger and William Hale Thompson, who was prominently identified with the club, as defendant asserts. Concerning this conflict in the evidence, the former opinion of this court states:

"There is a direct contradiction in the evidence as to whether the defendant ever signed the cancellation agreement. He insisted that he did not; his testimony is supported by that of other witnesses and it finds strong corroboration in the circumstances of the case. It does not appear that any person saw defendant sign the cancellation agreement. Thompson says that the resolution was handed to him by the defendant with the cancellation agreement indorsed thereon. The agreement purports to be by mutual consent. It is signed by Genslinger only, and notwithstanding the fact that it relieved and, according to Thompson, was intended to relieve the complainant of large responsibility, no record was made of it by Thompson, or by any other officer of the club, and, as stated, its very existence seems to have been unknown until the master had taken much evidence in the case. Under such circumstances we find it difficult to believe that defendant is committing perjury when he says he did not sign the cancellation agreement in question."

This court reversed the decree of the circuit court of Cook county and remanded the cause with directions to dismiss the bill of complaint for want of equity and to enter a decree in favor of the cross-complainant for the sum of $23,683.52 and directed that the club should forthwith issue and deliver to Genslinger 1,000 fully paid-up and transferable certificates of membership in the club, these certificates to be transferable only to

elected members of the club and to be exempt from payment of a transfer fee upon the first transfer. The defendant applied to the Supreme Court for a writ of certiorari, which was denied.

The club thereafter paid the $23,683.52 and delivered to Genslinger 1,000 certificates of membership in writing, numbered consecutively from 7301 to 8300. Each certificate stated that it was issued in accordance with a decree of the circuit court entered on November 12, 1918, and further stated:

"This is to Certify That
Charles H. Genslinger
Is a Member of the
NEW ILLINOIS ATHLETIC CLUB
of Chicago

in full and regular standing at the date hereof. The membership hereby represented is subject to dues and to all by-laws, rules and regulations.

"This membership is transferable on the books of the Corporation upon assignment and surrender of this Certificate in accordance with the provisions of the Constitution."

The certificates were signed by the president of the club and the seal and signature of the secretary were attached. Twenty-seven of these certificates have been transferred to other parties and are not involved in this litigation. The blank assignment and blank power of attorney to transfer the same on the books of the club "according to provisions set forth in the by-laws of the club" appeared on the back of each certificate. On November 12, 1918, these certificates were delivered by the club to Genslinger, and he retained possession of the same up to and including the date of his death, which occurred on September 15, 1920. At the twelfth annual meeting of the club, November 26, 1918, a motion was made for the adoption of a resolution reciting the decree of the circuit court, including the judgment

against the club of $23,683.52, and providing that an assessment of $10 should be levied on each and every resident and nonresident certificate of membership in the club which had theretofore been issued and not canceled. The resolution further provided that certificates of membership might be canceled and terminated by the board of governors for failure to pay the assessment. On the same day, by an amendment to section 16 of article 3 of the constitution, it was provided:

"Each resident member and each owner of record of each outstanding and uncanceled resident certificate of membership in this Club, shall pay annual dues of $80 upon each certificate of membership, owned by him, as shown by the records of this Club."

Section 17 was amended so as to provide that each nonresident and owner of a nonresident membership certificate should pay annual dues of $30 on each nonresident membership certificate standing of record in his name. By an amendment to section 17-a, it was further provided that both resident and nonresident certificates of membership might be canceled and annulled by the board of governors for failure to pay any instalment of annual dues thereon or to pay any special assessment or assessments levied thereon, provided such default should have been posted 30 days after the same became due. Section 18 of article 3 was amended so as to provide that no person should own or have an interest in more than one membership certificate at one time, except in case of a resident member desiring to become a life member or a nonresident member desiring to become a life or resident member. To this provision by amendment the following words were added: "And except Charles H. Genslinger, to whom the court has ordered one thousand certificates of membership be issued."

Genslinger took the position that this assessment against his certificates was illegal and refused to pay

the same. On June 24, 1919, the board of governors passed a resolution which recited that Genslinger was indebted to the club for special assessments on membership certificates owned by him in the sum of $10,000 and the further sum of $1,000, war tax thereon; that he was indebted to the club in the sum of $53,333.33 for dues on said membership certificates and the further sum of $5,333.33, war tax on these dues; that his name had been posted as delinquent on the bulletin board of the club on March 6, 1919, in accordance with the by-laws; that his default had been posted for more than 30 days after the indebtedness became due, and it was therefore resolved that all of the membership certificates, namely, Nos. 7301 to 8300 inclusive, were forfeited and canceled on June 24, 1919. Prior to this forfeiture, on December 10, 1918, the attorneys for Genslinger notified the club that as to these certificates the assessment had not been validly made for the reason that the certificates were not delivered to Genslinger until November 25, 1918, and that as to the certificates, notice of the meeting of the members of the club held on November 26, 1918, was not mailed to Genslinger as the holder of these certificates ten days before the date of the meeting; that the amendments alleged to have been made to the by-laws of the club at the meeting of the members on November 26, 1918, were not validly passed as to these certificates and were not applicable to the certificates for the reason that the certificates were not delivered until November 25, 1918, and as to these certificates the proposed amendments were not posted in the clubhouse and mailed to Genslinger as the holder of the same; further, that the club had no power to levy such assessments and fix such dues, and that these assessments and dues, even if valid, did not apply to the certificates of membership in question.

To this notice the club replied that the certificates showed that they were subject to dues; that the records

of the club showed the delivery of the certificates on November 14, 1918, in accordance with the by-laws, and that notices of the proposed amendments were mailed to all members of the club including Genslinger more than five days before November 26, 1918.

As already recited, Genslinger thereafter, on September 15, 1920, died. Plaintiff here, Elizabeth Jane Genslinger, his widow, was duly appointed executrix of his last will and testament. On September 24, 1921, she brought this suit in trover to recover damages for the alleged wrongful cancellation and forfeiture of 973 certificates. She filed a declaration in 14 counts setting out in detail the alleged wrongful acts of the defendant. The defendant filed pleas which averred that the action of the executrix was not commenced within one year from the death of Genslinger and that the cause of action did not survive his death. The pleas set out in full section 19 of chapter 83 of the statute of limitations (Cahill's St. ch. 83, ¶ 20) and section 123 of chapter 3 of the statute of administration (Cahill's St. ch. 3, ¶ 125). The executrix demurred to these pleas; her demurrers were overruled and she elected to stand on her demurrers. Judgment was entered against her and she perfected an appeal to this court.

The opinion of the court is reported in *Genslinger v. New Illinois Athletic Club*, 229 Ill. App. 428. The opinion of the court, contrary to the contentions of the club, held that the action was not barred by section 19 of the statute of limitations, and that it survived the death of Genslinger. In its opinion this court said: "We are of the opinion that the amended declaration alleges facts which constitute a conversion; and in our judgment the certificates of membership may be said to be personal property within the meaning of the clause of section 123 providing for the survival of actions to recover damages for the 'conversion of personal property.'"

Authorities were reviewed at length, and *Barclay v. Smith,* 107 Ill. 349, upon which the club now relies, was distinguished. Upon that appeal also the club questioned the sufficiency of the declaration. The opinion of this court points out that the declaration was not demurred to—hence all intendments were in favor of the pleader, and that the declaration could not be said to fail wholly and absolutely to state a cause of action and that it was not fatally defective. We said:

"Furthermore, we are of the opinion that the objection to the declaration is without merit. The objection is urged for the first time on this appeal, and, therefore, the declaration is not to be tested as if on demurrer, as counsel for appellee assume, but as if after verdict; and when so considered, the rule that the pleadings are construed most strongly against the pleader is reversed. . . . The declaration alleges that at the *annual meeting of the club,* by resolution, the assessment in controversy was levied against each certificate (the resolution is set out); that at the said *annual meeting* the amendments in controversy to the by-laws were adopted levying certain annual dues on each certificate. (The amendments are set out.) The declaration further alleges that at the time of the annual meeting, 'and from that time up to and including the time of the cancellation and forfeiture hereinafter mentioned, *all* of the by-laws of' the club were the following: (The by-laws are then set out in full.) The declaration again avers that said alleged amendments to the by-laws were made at the *annual meeting of the club,* and at no other meeting. These allegations are sufficient to negative any presumption that the amendments to the by-laws were adopted by the *directors* of the club. If we give the averments of the declaration a liberal construction, and a fair and reasonable intendment, it cannot be presumed that the *directors* adopted *additional* by-laws which justified the cancellation and forfeiture of the certificates."

The judgment of the trial court was reversed and the cause remanded for further proceedings consistent with the opinion. In the opinion transferring this cause to this court, the Supreme Court stated that section 19 of the statute of limitations had no application; that while actions in tort did not survive at common law, by 3 Edw. III, ch. 7, it was enacted that actions of trespass for injuries to personal property should survive and that executors might recover damages for such injuries; that this act became the law of this state under the statute adopting the common law and certain statutes of the British parliament. The court further stated: "We express no opinion whether the certificates in question were or were not personal property."

This review of the history of this litigation, together with a careful perusal of the briefs filed in behalf of the club, discloses that as to most of the questions raised the same are no longer open to discussion between the parties in this court. This situation is frankly recognized in the reply brief of the club filed in the Supreme Court, which states:

"We state frankly to the court that we are not desirous of voluntarily going to the Appellate court on this appeal, which involves the correctness of the judgment of the Appellate court in the prior appeal in the instant case. We have the greatest respect for the judges of the Appellate courts. Nevertheless, we earnestly feel that justice requires that this appeal be taken to a court which has the authority to pass on the vital constitutional questions we have here presented and at the same time to pass on questions other than constitutional. It would be strange indeed if on this appeal we would again be compelled to go to the Appellate court and ask the Appellate court to determine vital and controlling propositions which it has already passed upon and determined contrary to our conten-

tions. It would be strange indeed also if we were to be compelled to go to that court and be faced with a certainty that as to the questions involved in the former appeal we were absolutely bound, and then possibly be compelled to resort to the uncertain remedy of *certiorari* to bring the second judgment of the Appellate court, as well as the first judgment of the Appellate court in the instant case, before this court for review.''

These supposed constitutional questions raised by the club's contention that the former judgments of this court have deprived it of its property without due process of law; that section 19 of chapter 83 of the Revised Statutes, as construed in our former opinion, is unconstitutional, null and void,—are of course settled contrary to these contentions by the judgment of the Supreme Court finding that no constitutional question is in fact presented in the case. The further contentions that the nature of these certificates is such that they are without pecuniary value and that an action in trover cannot be predicated thereon; that these certificates were not assignable and were not personal property within the meaning of the statute; that the same are not goods and chattels of such kind and character as to be proper subject matter of an action in trover; that the alleged contract with Genslinger, by which it was agreed to transfer 1,000 fully paid-up certificates of membership in the club to him, was unlawful and *ultra vires* because it was beyond the power of the board of directors to make,—all these questions, argued with much ability and numerous citations of authority, have been passed upon by this court in litigation between these same parties, and we are, for obvious reasons, absolutely concluded by our former judgments. This court held that these 973 certificates were personal property and that an action for the conversion thereof could be maintained. We are bound by

our former decisions, but if we were not so bound, and the question were yet open, we would, both on reason and authority, announce the same rule of law. To the authorities cited might well be added the opinion of Chief Justice Taft in *Chicago Board of Trade v. Johnson,* 264 U. S. 1.

Moreover, even if the defense of *ultra vires* could be considered as available on this record, it could not prevail for the reason that the contract with reference to the delivery of these certificates of membership was executed and performed prior to the beginning of this suit. *Kadish v. Garden City Equitable L. & B. Ass'n,* 151 Ill. 531; *McNulta v. Corn Belt Bank,* 164 Ill. 427; *National Home Building & Loan Ass'n v. Home Sav. Bank,* 181 Ill. 35; *Wood v. Supreme Ruling of Fraternal Mystic Circle,* 212 Ill. 532; *Standard Brewery v. Creedon,* 283 Ill. 474.

The only questions therefore which are now open for our consideration are those based on alleged errors said to have taken place on the trial. It cannot be successfully contended that the evidence (much of which was presented by stipulation) fails to sustain the material averments of the declaration, and obviously the alleged errors argued which question the sufficiency of the declaration cannot now be successfully urged in this court.

It is argued that the court erred in refusing to give instructions offered by defendant on its theory of the case. These instructions are not specifically pointed out in the argument, and an examination discloses that the assignments of error relating thereto involve the determination of these same questions which have already been decided by this court.

It is urged that the trial court erred in admitting evidence over the objection of defendant. The court admitted in evidence the financial balance sheet of the

defendant club for the year beginning October 31, 1917, and ending October 31, 1918, which showed total assets of $1,305,012.17. The evidence was offered on the theory that the sum was material as tending to show the value of the club memberships. Defendant says that the value of the memberships of social clubs is not determined by the value of property belonging to the club, but rather by social and business standings of the members and similar circumstances. However this may be, we think the value of the property was certainly not wholly immaterial upon the issue as to the value of the memberships, and that it was proper to submit this evidence to the jury for such consideration and weight as the jury might give it.

It is next contended that the court erred in permitting the opinion of this court in 211 Ill. App. 220, to be read to the jury. The opinion was, however, made a part of the stipulation of facts, and defendant's counsel also read to the jury such portions of this opinion as he supposed would sustain his contentions. At the time of doing so, he suggested that opposing counsel might in their turn do the same. We quote from the additional abstract of record:

"In argument of Mr. Stransky on behalf of defendant.

"When Mr. Stransky was discussing the Appellate Court opinion in New Illinois Athletic Club of Chicago v. Genslinger, 211 Ill. App. 220 to 233, the following occurred:

"Mr. Stransky: Your Honor, this opinion in this case is made a part of this stipulation of facts, and I have a right to read it to the jury because it is a fact—because it is in the stipulation as a fact.

"The Court: Wasn't it read in the stipulation?

"Mr. Hume: We are not objecting to your reading it. We can read it if he does.

"Mr. Stransky: Sure, you can read it."

Defendant is hardly in a position to complain on this point.

It is urged that the court erred in admitting in evidence the minutes of the first meeting of the board of directors of the defendant club. It was contended by the defendant that at the time of making the contract with Genslinger a by-law of the club provided: "No person shall own or have any interest in more than one certificate at any one time."

In order to meet that contention, after having laid the proper foundation plaintiff offered in evidence a copy of the by-laws (photostatic copies of which appear in the record as Exhibit No. 4). Defendant says that the exhibit was in an altered and mutilated condition and therefore should not have been admitted. The alterations, however, were wholly immaterial. The issue of *ultra vires*, on which this evidence was supposed to be material, had already been adjudicated, as we have indicated.

It is urged that the court erred in giving instruction No. 11, at the request of the plaintiff. That instruction is as follows:

"The jury is instructed, as a matter of law, that the defendant, New Illinois Athletic Club, had no right to levy an assessment and dues against the nine hundred seventy-three (973) certificates of membership issued by it to Charles H. Genslinger during his ownership thereof, without the consent of said Genslinger, and if you believe from the evidence that an assessment and dues were levied against said certificates by said defendant, while such certificates remained in the possession and ownership of said Genslinger, and that because such assessment and dues were not paid by said Genslinger, the 973 certificates owned by him were declared forfeited and canceled by the defendant, and were of value, then you should find the defendant

guilty, and assess the plaintiff's damages at such sum as you believe from the evidence was a fair value, if any, of said 973 certificates, at the time they were declared forfeited and canceled by the defendant.''

This instruction seems to be in harmony with the law applicable as stated in former opinions of this court.

It is also urged that the court erred in making unwarranted remarks in the presence of the jury. This contention, we think, may be answered by a statement of the Supreme Court in *Birmingham Fire Ins. Co. v. Pulver,* 126 Ill. 329.

''But every unguarded expression of the judge in stating reasons to counsel for his rulings, cannot be treated as a ground for granting a new trial. To do so would be to greatly embarrass the administration of justice.''

It is urged that the damages allowed are excessive. It is apparent that the parties agree that the jury found the value of the memberships at the time of the conversion to be $200 each. The stipulation of facts shows that resident memberships at the time of the forfeiture sold for about that amount. The stipulation also shows the net assets of the club at that time were $889,279.71, and the number of members 3,008. This would indicate a property value of $260 per membership. The certificates of Genslinger in one respect were of greater value than other resident certificates, in that according to the contract and the decree, the assignee would not be required to pay a transfer fee of $75, which was required when other certificates were transferred. The conversion of plaintiff's property took place June 24, 1919. The measure of damages in trover is the value of the property at the time of the conversion with legal interest from that date. *Sturges v. Keith,* 57 Ill. 451; *McLean County Coal Co. v. Long,* 81 Ill. 359; *Janeway v. Burton,* 201 Ill. 78. Apparently

the jury made no allowance for interest, to which it would seem plaintiff is entitled. The judgment therefore clearly is not excessive.

The personnel of the majority of this court has changed since the filing of the opinion in *New Illinois Athletic Club v. Genslinger*, 211 Ill. App. 220. There are statements in the brief for defendant from which an inference might be drawn that the learned judge who wrote that opinion was hostile to one of the witnesses in the case. A slight examination of public records easily available discloses that the statements have no basis in fact and must be attributed to a lively imagination. While it is true, as defendant's brief suggests, that what is technically known as a change of venue may not be taken by a litigant in this court, lawyers well know that a litigant may by motion suggest—although not compel—the transfer of his cause for any good reason. No such suggestion was made by the able counsel who represented defendant in this court at that time. The inference is that no fact existed upon which the motion could have been based.

For the reasons already indicated the judgment is affirmed.

*Affirmed.*

O'Connor, P. J., and McSurely, J., concur.